McCoy v. State.

McCoy v. State.

1. CRIMINAL PLEADING: *Former acquittal.*
   A plea of former acquittal of the offense charged is not sustained by proof of acquittal under a former indictment of acts of which the defendant could not have been convicted under the last.

2. CRIMINAL PRACTICE: *Omission to furnish copy of indictment to defendant.*
   The omission of the clerk to furnish a defendant indicted for murder

with a copy of the indictment before arraignment, is no ground for arrest of judgment. It is ground only for new trial, and is waived by pleading and going to trial without claiming a copy.

3. PRACTICE IN SUPREME COURT: *Conclusiveness of verdicts.*
The Supreme Court will not interfere with the verdict of a jury for want of evidence to sustain it, unless there is a total absence of proof on a material point, or the proofs so completely fail to support it that it must have been the result of prejudice or partiality.

4. CRIMINAL EVIDENCE: *Statements of defendant after the crime.*
Evidence of the defendant s statements after the commission of a homicide, which are no part of the *res gestœ*, is not admissible for him.

5. WITNESS: *Defendant in criminal case.*
A defendant in a criminal case who becomes a witness for himself, is subject to the same liabilities on cross-examination as any other witness. His character for veracity may be impeached, though his good character may not have been previously put in issue, and his testimony may be contradicted by proof of his prior inconsistent statements.

6. INSTRUCTIONS: *Should not be repeated.*
Where the trial court has given the law correctly and with sufficient fullness on all the points arising in the case, it is no error to refuse additional instructions which simply present the same ideas couched in different language.

APPEAL from *Pope* Circuit Court.
Hon. G. S. CUNNINGHAM, Circuit Judge.

*Jeff. Davis*, for appellant.

*First*—The court erred in permitting the cross-examination of defendant as a witness, and the evidence of Tom Osborne, for the purpose of contradicting McCoy, and proving him guilty of an entirely different crime, viz.: accessory after the fact, to go to the jury. It was not only improper, but highly prejudicial to defendant. *2 Ark., 229; 37 ib., 261; 39 ib., 278; 1 Bish. Cr. Pro., sec. 1120 to 1129; 38 Ark., 221; 43 ib., 367.* All evidence tending to

McCoy v. State.

prove him guilty of being an accessory after the fact was irrelevant and inadmissible, as he could not possibly be convicted of that crime under the indictment. *41 Ark.*, *173; 1 Bish. Cr. Law, secs. 672, 883 ; 2 Bish. Cr. Pro., secs. 8, 9, 10 and 11.*

*Second*—It was error to exclude the testimony of Esk- ridge as to statements of defendant to Sam Osborne while washing Osborne's wounds. It is certainly bad practice to admit one part of a conversation which is against the de- fendant, and exclude that which might be taken in his favor. All should be admitted or none. *43 Ark., 273; 1st Bish. Cr. Pro., secs. 1085–6 and 1125; 1 Gr. Ev., sec. 201–2 and note, and 108 and 110.*

*Third*—The court erred in refusing instructions 4, 6, 7 and 8. These instructions were not fully embodied in those given by the court. They announce clear propositions of law, and should have been given as asked. *16 Ark., 329; Wharton's Cr. Law, 2d ed., 264; Bish. Cr. Pro., vol. 1, sec. 1103; Bish. Cr. Law., vol. 1, secs., 967, 972, 975; 47 Ala., 603; 3 Gr. Ev., sec. 25.*

*Fourth*—The evidence was not sufficient to sustain the verdict of the jury; in fact, the verdict is such as to shock one's sense of justice, and should be set aside. Five wit- nesses swore positively that McCoy was at the house of Eskridge when the murder was committed. Reviews the evidence in detail.

*Fourth*—The court erred in sustaining the demurrer to the plea of former acquittal. Because the assault upon Mrs. McAllister is alleged to have occurred in the attempt to murder William McAllister by the same parties, and at the same time and place. Defendant was indicted for both offenses upon the same testimony and by the same grand jury. Defendant pleaded an *alibi* and was acquitted. See *Whart. Cr. Law, 2d ed., 199; 1 Bish. Cr. Law, secs. 801,*

*1052 to 1061; 1 Green. (N. J.), 361; 1 Tex. Ct. App., 151; 3 MacArthur, 370; 32 Ark., 231.* The fact of McCoy's presence was negatived by the first trial.

*D. W. Jones,* Attorney General, for appellant.

The demurrer to the plea of former acquittal was properly sustained, because the appellant could not have been convicted of the charge in this case on the proof in the first case. There were two distinct offenses. *State v. McMinn, 34 Ark., 160.* Even though the same physical act was charged in the two cases, the appellant could be acquitted on the first trial and convicted on the second. *Morgan v. State, 34 Tex., 677.*

The appellant having testified to substantially the same facts offered to be proven by Eskridge, was not hurt by his exclusion.

The *statute (Acts of 1885), p. 126,* simply makes the defendant a competent witness; he takes the stand like any other witness, and is examined and cross-examined under the same rules, and to the same extent as any other. *1 Bish. Cr. Pro., 1182; State v. McGinnis, 76 Mo., 326; State v. Sardis, 76 ib., 35; State v. Owen, 78 ib., 367.* The state may discredit him as any other witness. *1 Bish. Cr. Pro., 1185.*

Voluntarily testifying in chief on a particular subject, he may be compelled to answer on cross-examination, although the answer may criminate him. *Cal. (S. C.), People v. Freshour; 12 Chic. L. News, 438;* also, *8 Wash. L. Rep., 567; 1 Bish. Cr. Pr., 1183.*

The state introduced evidence tending to prove appellant guilty of being an accessory after the fact. In cases cited by appellant on this point, separate and distinct offenses were introduced in evidence to prove the offense charged. In *Dunn v. State, 2 Ark., 229,* defendant was on trial for the

murder of Williams, and his declarations were admitted showing his connection with the prior murder of Earnest, and this was held admissible as tending to show a motive for the murder of Williams. While the general rule is against the admission of evidence of a separate and distinct offense, it was said that such evidence is admissible when proof has been given establishing, or tending to establish, the offense with which defendant is charged and showing some connection between the different transactions. In *Melton v. State, 43 Ark., 367*, evidence of a series of connected wrongs growing out of and identifying each other was held admissible. If the testimony proves, or tends to prove, the offense charged, it is no objection to it that it also tends to prove another. *1 Bish. Cr. Pro., 1121.*

Hogins' testimony that Eskridge, after giving testimony in the examining court, adhered to such testimony in declarations to others was inadmissible. " When a witness has been impeached, evidence that he has, on other occasions, made statements similar to what he has testified in the cause, is not admissible." *1 Greenl. Ev., 469.*

The 4th and 6th instructions were given in the 2d, and the 9th in the 5th.

The motion in arrest was properly overruled because no application for the indictment was made and no question raised until after plea and trial. *Johnson v. State, 43 Ark., 391.*

There being no substantial error in the whole case, it should stand affirmed.

SMITH, J. McCoy, Bookout and Osborne, were jointly indicted for the murder of William McAllister. McCoy pleaded a former acquittal; but his plea was adjudged bad upon demurrer. The plea and the record evidence offered to sustain it, show that the offense of which he was for-

1. CRIMINAL PLEADING: Former acquittal.

merly acquitted, was an assault with intent to kill, committed upon Mary McAllister, the wife of the deceased. The theory of the plea is, that the conflict, in which McAllister was killed and his wife wounded, was one and the same transaction, for which two separate indictments were returned ; that his defense was the same in both cases, viz. : An *alibi;* and that he is protected by the previous verdict from any further prosecution growing out of the same affair. The plea sets forth, however, that it was not by the same shot that the two injuries were inflicted.

In *State v. McMinn, 34 Ark., 160,* the defendant had been previously indicted, tried and acquitted upon a charge of stealing a cow and two heifers, the property of one Carroll. To an indictment which charged him with stealing a bull, the property of one Adney, he pleaded the former acquittal in bar. But it was held that, as upon the first indictment, he could not have been possibly convicted of the offense described in the last indictment, the plea presented no bar.

A similar result was reached in *Williams v. State, 42 Ark., 35,* where the defendant was first indicted for stealing the money of Mrs. Elliston, viz.': Two greenback bills, two national bank bills and two silver certificates, of the denomination of $10 each ; also ten silver dollars, ten halves and ten quarters. The defendant having pleaded not guilty, a jury was impanneled and sworn ; and after witnesses were examined, and counsel had argued the case, and the court had charged the jury, a *nol. pros.* was entered. The defendant was afterwards indicted for stealing two greenback bills and two national bank bills, each of the denomination of $20, and one hundred silver dimes, and one hundred nickels belonging to Mrs. Elliston. He pleaded former jeopardy, alleging that it was all one and the same larceny. But a conviction was sustained upon

the ground that, under the first indictment, he could not have been convicted of stealing any piece of the money described in the second.

In *Morgan v. State, 34 Texas, 677*, the defendant had been acquitted of the theft of $8.50, alleged to have belonged to one Warwick, and to have been stolen from his dwelling-house and from his possession. He was again indicted, and this time convicted of the theft of $8.50, the money of Richard Peterson, and stolen from his house, but in the possession of Warwick. And it was ruled that the offenses were distinct.

These precedents suffice to show that there is no identity of accusation in the case at bar, and the one on which McCoy was acquitted. The injured persons were not the same; the grade and punishment of the two offenses were different. The indictments were not even founded on the same physical act; and their legal effect is different.

The defendant was then put on trial, upon his plea of not guilty and was convicted of murder in the first degree. He moved in arrest of judgment, for insufficiency of the indictment and because he had not been furnished with a copy of it forty-eight hours before arraignment. No defect is perceived in the form of the indictment. The other objection is not available on motion in arrest; because, even if such a motion raises any other question than the sufficiency of the indictment (*Mansf. Dig.*, sec. *2302*), yet the fact that the clerk had not delivered to the defendant a copy of the indictment, does not appear on the record. The utmost effect of such an omission of duty is, that if a defendant does not waive his right in this respect, and is forced to trial without a copy, it lays a foundation of a motion for a new trial. But by pleading and going to trial without insisting on his privilege, the defendant waives it. *Johnson v. State, 43 Ark., 391.*

2. PRACTICE: Furnishing indictment to defendant.

McCoy v. State.

3. PRACTICE IN SUPREME COURT: Conclusiveness of verdict.

The motion for a new trial alleged that the verdict was against evidence; that improper evidence was admitted and competent evidence excluded, and that the jury were misdirected.

The testimony revealed a revolting instance of cold-blooded assassination. McAllister and his family were seated around a winter fire in their own house. It was two hours after night had set in. The busy housewife was carding wool. Upon this peaceful scene, three men, with pistols in their hands, intruded. They effected an entrance by bursting open the door of the house, and immediately began an indiscriminate firing upon McAllister. His wife, in attempting to protect him, was struck over the head with a pistol, and received a shot in her arm, which rendered amputation necessary. McAllister was killed. The three men were recognized by Mrs. McAllister, her daughter and her three sons, as McCoy, Bookout and Osborne. They were neighbors, well known to all the family, and they wore no disguise. According to their testimony, McCoy fired the fatal shot. Bookout and Osborne had a private grudge against McAllister because he had recently sworn out a warrant against them. They had made an attack upon him on the public highway, when he was compelled to take refuge in the house of a neighbor. No motive was known for McCoy's participation in the crime. He was supposed to be on friendly terms with the McAllisters. But he was a brother-in-law to Bookout and had evinced some excitement about the time that the writ was issued for the arrest of Bookout and Osborne, and had expressed an opinion that McAllister might as well select the place he wished to be buried in. In opposition to this testimony, McCoy and four other witnesses swore that he was at the house of Nathaniel Eskridge, two and a-half miles from McAllister's, at the

time the murder was committed, and indeed until Osborne was brought there wounded, he having been shot in the neck by one of his comrades in the course of the conflict at McAllisters. But the jury chose to believe the witnesses for the prosecution, and to disbelieve the defendant's witnesses. The state had in truth introduced evidence tending to prove that three of the defendant's witnesses were not of unimpeachable character.

We do not interfere with verdicts on the ground that they are not warranted by the testimony, unless there is a total absence of proof on a material point, or the proofs so completely fail to support the verdict, that, in order to arrive at their conclusion, the jury must have acted from prejudice or partiality.

The homicide occurred in the year 1874, but the trial did not take place until 1885, in consequence of the defendant's escape from custody and flight to Texas, where he passed under an assumed name. Several of the witnesses, who had testified in the examining court, and whose testimony had then been reduced to writing, were now dead, or out of the jurisdiction. These minutes were read by agreement. Eskridge, in his deposition, after stating that Osborne came to his house, in the night of January 26, 1874, and related how he had been shot at McAllister's, had sworn that McCoy spoke up and said, " Sam (addressing Osborne), I told you and Ben Bookout, three or four days ago, to keep away from there. I would not it was me for the whole world." These declarations of McCoy were properly excluded from the jury. They were no part of the *res gestæ*, but merely narrative of a past occurrence and hearsay.

4. CRIMINAL EVIDENCE: Statements of defendant.

The defendant gave evidence in his own behalf. Amongst other things he stated that he dressed Osborne's wounds at the house of Eskridge; that upon an intimation by

5. WITNESS: Defendant in criminal case.

Eskridge that he did not wish to harbor Osborne, defendant had carried him to Mrs. Bookout's, and had put him away in the corn crib; that defendant went next morning after Osborne's brother, not with any view to aid his escape, for he supposed him to be mortally wounded, but merely that his brother might come and nurse him; and that defendant did not understand until noon of that day, when he was arrested, that McAllister was dead, although Osborne had told him that he and Bookout had shot him. The defendant's attention was particularly called to his statement made in the examining court, not under oath however. The state then put in evidence this statement, in which the prisoner had given a different version of some of these transactions; and also had Osborne's brother sworn, who stated that McCoy came to him, in the morning of January 27, 1874, and informed him that his brother Sam and Bookout had killed McAllister the night before; that Sam was lying wounded in Mrs. Bookout's crib; and advised that he be gotten out of the way before the officers came. Exceptions were properly saved; and it is now contended that this line of evidence was not legitimate; that it had no tendency to prove the defendant's guilt of the crime whereof he was on trial, but only to prejudice him in the eyes of the jury by showing that he had harbored and protected one of McAllister's murderers and connived at his escape—a crime for which the prisoner was not indicted.

The answer is, that McCoy appears here in the double character of an accused party on trial and of a witness. He opened the door to this cross-examination by first testifying voluntarily to matters which occurred subsequently to the killing. And a witness may always be discredited by proving that he has made contradictory statements on a former occasion, provided he is first inquired of concern-

ing such former statement. *Drennen v. Lindley, 15 Ark., 359.*

A defendant in a criminal case takes the stand like any other witness. He is subject to the same liabilities on cross-examination as are other witnesses. His character for veracity may be impeached, though his good character may not have been previously put in issue. And he may be contradicted by proof of prior inconsistent statements. *1 Bish. Cr. Pro., sec. 1182, et seq.; Wharton's Cr. Ev. 8th ed., secs. 429, 434,* and cases. cited; *Brandon v. People, 42 N. Y., 265; State v. Owen, 78 Mo., 367.*

The court refused the following prayers of the defendant for directions :

" The charge against the defendant involves his presence at the time and place of the commission of the alleged murder, and if the jury have a reasonable doubt, from the whole testimony in the case, of the defendant's presence at the time and place of the commission of the offense charged, it is their duty to acquit him."

" If the jury believe from the evidence that Ben Bookout and Sam Osborne, on the night of the 26th of January, 1874, in the county of Pope, and state of Arkansas, killed and murdered William McAllister, and that the defendant Jas. McCoy, at the time of the commission of the said murder, was at the house of Nathaniel Eskridge, or the jury entertain a reasonable doubt of that from the whole testimony in the case, they will find him not guilty."

" The law presumes the defendant innocent; and this presumption remains, and is to be considered by the jury as evidence in the case until the contrary appears from the evidence."

" It is competent for the defendant to introduce evidence of his general good character as a peaceable and law-abiding man ; and this is to be considered by the jury as a circum-

stance in the testimony tending to establish the improbability of his having committed the crime charged against him."

"It is competent for the state to introduce evidence of a grudge or bad feelings existing between deceased and defendant, or any testimony that would reasonably tend to establish a motive for the defendant to do and commit the crime charged; and if the absence of motive appears from the evidence, this is a circumstance to be considered by the jury in determining the guilt or innocence of the defendant."

But the jury had already been instructed that the state was bound to prove every material allegation in the indictment to their satisfaction beyond a reasonable doubt, and the material allegations in this indictment had been pointed out. It had been explained to them that the defense was an *alibi;* and that if the proof raised in their minds a reasonable doubt as to the defendant's presence at the time and place of the killing, it was their duty to acquit. They had also been told that motive, or the absence of motive, to commit the crime, was a circumstance to be considered by them in determining his guilt or innocence; and that previous good character was also to be taken into account; but if the evidence showed his guilt, they should so find, notwithstanding his good character.

6. INSTRUCTIONS, not to be repeated. The multiplication of instructions is to be deprecated, as tending to confuse and embarrass the jury, rather than to enlighten them. If the trial court give the law correctly and with sufficient fullness upon all the points arising in the case, it is no error to refuse additional requests, which simply present the same ideas, couched in different language. *Crisman v. McDonald, 28 Ark.; 9; Kelly v. Jackson, 6 Pet., 622; Scott v. Lloyd, 9 ib., 418; Saber v. Cooper, 7*

*Wall., 565; Railway Co. v. Whitton, 13 ib., 270; Ind. R'y Co. v. Horst., 93 U. S., 291.*
Judgment affirmed.