MAXEY *v.* STATE.

Opinion delivered June 10, 1899.

1. NEW TRIAL—CUMULATIVE EVIDENCE.—It is not error to refuse to grant
a new trial for newly discovered evidence that is merely cumulative.
(Page 525.)

2. INSTRUCTIONS—SPECIFIC AND GENERAL.—The court's refusal to give a
specific instruction will not be prejudicial if the same matter is covered
by other and more general instructions given. (Page 526.)

3. RAPE—INSTRUCTION—REPUTATION OF PROSECUTRIX.—In a prosecution
for rape there was evidence that the general reputation of the prose-
cutrix for truth and immorality was bad, but none that she had a bad
reputation for chastity. The court refused to give an instruction that
"the character of the woman may be called in question for the purpose
of affecting the probability of the act being voluntary or against her
will." *Held*, that the refusal was not error; that if the proof of char-
acter is to affect the probability of her assenting to the act of sexual
intercourse, her general reputation for chastity must be shown; that if
it is to affect her credibility as a witness generally, her general reputa-
tion for truth and immorality must be proved. (Page 537.)

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

*Chew & Fitzhugh*, for appellant.

It was error for the court to deny the defendant's motion
for continuance to enable him to obtain the evidence of the wit-
nesses who were in Texas. 60 Ark. 564; 21 Ark. 460; 50
Ark. 161; 32 Ark. 462; 1 Bish. Cr. Proc. 951, a, b and c; 38
L. R. A. 721; 4 Am. & Eng. Enc. Pl. & Pr. 847–849, 861; 80
Ky. 480; 65 Ga. 332; 14 S. W. 1008. The fact that the evi-
dence sought is cumulative is no reason for denying the motion
in a felony case. 14 S. W. 1008. The court erred in refusing
to give the sixth instruction asked by defendant, cautioning the

jury as to the weight to be given to the evidence of an impeached witness. Sackett, Inst. 34–36; 1 Thompson, Trials, 520, 536–7; 2 *id.* 2423–6; 1 Tex. App. 432; 25 Mo. 553. It was error to refuse the fourth instruction asked by defendant. 63 Ark. 470; 2 Bish. Cr. Law, 1122; 1 Whart. Cr. Law, § 557; 59 N. Y. 374; 4 N. E. 63. The remarks of the attorney for the state were improper, and constitute ground for reversal. 62 Ark. 126; *ib.* 516; 58 Ark. 473; 63 Ark. 174.

*Jeff Davis*, Attorney General, and *Chas. Jacobson*, for appellee.

WOOD, J. Appellant was convicted of the crime of rape. The prosecutrix was a German woman, forty-nine years of age, who could not speak English well, and testified through an interpreter. The proof on behalf of the state (without setting it out in detail) tended to show that the prosecutrix was led by a young white boy, Tommy Downs, to a place about one quarter of a mile from the depot at Van Buren, and turned over by him, in the woods near the Morrell place, to the appellant, who claimed that he would get her a place to stay all night. The testimony to the effect that the prosecutrix was led by Tommy Downs, and taken to where he said he delivered her over to the appellant, at appellant's request, is such as to leave no well-founded doubt of that fact. But the testimony going to show that the prosecutrix was raped by the appellant is exceedingly unsatisfactory, so much so as to give us serious pause as to whether it is sufficient to support the verdict.

The testimony of the prosecutrix, in itself, as it appears in this record, is incoherent and desultory. Her reputation for truth and morality is shown to be bad. As one of the witnesses expresses it, "utterly worthless." Another witness said: "From my knowledge of this person, I believe her to be insane upon the subject of being raped, and she has a mania of accusing persons of having assaulted her with intent to rape. While an inmate of the poor farm, she falsely accused me and others of rape." This witness was the superintendent of the poor farm in Missouri. Another witness (Carl Starck) testified that he regarded her as sixty-five per cent. insane; that her reputation for truth and morality was bad; that she told him that "she had

made lots of money by killing unborn children for women." He said: "She had a mania for placing herself in a place where she will be commiserated. Anything," says he, "that will cater to that." Believing her story, however, there was some evidence to justify the conclusion that the appellant had sexual intercourse with her by force, and that it was against her will. Though there is no proof whatever of any actual physical resistance, there were circumstances from which the jury might have concluded that her will was overcome through fear of violence. But, however unsatisfactory, under the rule which has so long been adhered to by this court, we cannot set aside the verdict. For to do so would devolve upon us the duty of passing upon the credibility of the witnesses and determining the weight of the evidence. That was peculiarly the province of the jury, and, as the learned circuit judge, who saw and heard the prosecutrix and all the other witnesses testify, refused to set aside the verdict, we will not disturb it, because, as improbable as it may be, considering the character and demeanor of the prosecutrix, that any negro had sexual intercourse with her and against her will, yet it was not impossible, and, notwithstanding the reputation she is shown to have possessed, it was still a question for the jury, and not for this court, to say whether her testimony was true. The jury must have believed her, and the circuit judge, who had a much better opportunity than we of judging of the credibility of the witnesses and the presence or absence of anything like passion or prejudice upon the part of the jury, has permitted the verdict to stand, and we will therefore not disturb it.

1. Were there any errors of law? The court did not err in overruling the motion for a continuance. One of the grounds insisted upon for a continuance was that appellant had been informed, and he believed he could prove, "by divers and various persons, who were citizens and residents of Terrell, Texas, but whose names were unknown to the defendant, that in the year 1895 said Hulda Mayer, the prosecutrix, falsely and fraudulently charged two negro men with having raped her, and that on account of said false charges said two innocent men were hanged." If this testimony were competent at all, it was only so for the purpose of showing a disposition upon the part

of the prosecutrix to falsely accuse persons of raping her. That disposition was abundantly shown by other evidence in the case, and, even if the motion had been definite enough to have assured the court that such testimony could have been obtained, still no prejudice has resulted to the appellant in not allowing him time to obtain it.

2. It is insisted that the court erred in not giving, at the request of the defendant, the following as instructions:

"(4). If the jury believe from the evidence that, at the time the rape is alleged to have been committed, the prosecuting witness had it in her power to resist the defendant, and prevent the offense by kicking, biting, striking him, or by making an outcry, or by any other mode calculated to repel his attack, and that she failed to make all the resistance then in her power to make, then this is a circumstance that the jury should take into consideration, with all the other evidence in the case, in determining whether the rape was actually committed."

"(6). The jury are instructed that in prosecutions of this kind the character of the woman may be called in question for the purpose of affecting her credibility as a witness, and as a circumstance affecting the probability of the act of intercourse being voluntary or against her will, or whether there was any intercourse whatever; and if the jury believe from the evidence that the prosecuting witness is a woman of bad fame or evil repute, or that her reputation for truth and morality is bad, then they may take this fact into consideration for that purpose, together with all the other evidence in the case, in determining the amount of credit, if any, to which her testimony may be entitled."

The court gave the following, as requested by the defendant: "To authorize a conviction of rape, the jury must believe from the evidence beyond a reasonable doubt that the defendant had carnal connection with the prosecuting witness forcibly and against her will, and that she did not yield her consent during any part of the act. To constitute the crime of rape, the will of the female alleged to have been outraged must have been overcome, either by force, violence or fear. If she consents to sexual intercourse in the least during any part of the act, there

is no such an opposing will as the law requires to convict on the charge of rape."

Also the following on its own motion: "To authorize a conviction of rape, the jury must believe from the evidence, beyond a reasonable doubt, that the defendant had carnal knowledge of the prosecuting witness forcibly and against her will, and that she did not yield her consent during any part of the act. To constitute the crime of rape, the will of the female alleged to have been outraged must have been overcome, either by force, violence or fear. If she consents to sexual intercourse in the least during any part of the act, there is not such an opposing will as the law requires to convict on the charge of rape."

The fourth request by appellant specifies particular acts, and tells the jury that they may consider the absence of these as a circumstance, in connection with all the other evidence, in determining whether the rape was actually committed. Every proposition set forth in this request is comprehended under the general terms used by the court in the instructions given *supra*. Therefore the absence of the specific acts, which counsel sought to embody in an instruction, going to show the want of force or consent, upon the part of the prosecutrix, to the act of sexual intercourse, if same occurred, could have been, and doubtless were, pressed upon the jury in argument, and the appellant got the benefit of them. The appellant could not have been prejudiced by the refusal of the court to give the instruction, even if the giving of it were otherwise proper.

Was number six, *supra*, proper? It is undoubtedly true that in prosecutions of this kind the general reputation of the prosecutrix for lack of chastity, or the fact of her being a common prostitute, may be adduced in evidence. "It helps," says Mr. Bishop, "the probabilities that the connection was voluntary on her part, and that his (the prisoner's) manifestations of apparent force came rather from his presuming her consent than from a purpose to ravish her." 2 Bish. Cr. Pro. § 965; *Pleasant* v. *State*, 13 Ark. 360. Mr. Wharton says: "That it is no defense to an indictment for rape that the prosecutrix was a woman of loose character, there can be no question; and if the fact of a forcible connection against the

prosecutrix's will be established, her prior looseness would have nothing to do with the issue; on the other hand, when the issue is consent on the part of the prosecutrix, her prior history as to chastity is logically material." 1 Wharton, Cr. Law, § 568. The reason for permitting evidence of the bad reputation of the prosecutrix for chastity in cases of rape is that it is more prob-able that an unchaste woman assented to such intercourse than one of strict virtue. The evidence is received upon this ground, and not for the purpose of impeaching the credibility of the witness. 3 Rice, Ev. §§ 820–1.

The instruction says the "character of the witness may be called in question for the purpose of affecting her credibility as a witness, and as a circumstance affecting the probability of the act of intercourse being voluntary or against her will." Our statute permits a witness to be impeached by showing that "his general reputation for truth and immorality renders him unworthy of credit." Sand. & H. Dig. § 2959. Now a witness may be untruthful, and have a bad reputation for morality in other respects, and yet be perfectly chaste, so far as sexual intercourse is concerned. The untruthfulness or immorality of the prosecutrix, in other respects than pertains to her chastity and virtue, does not "affect the probability of the act of intercourse being voluntary or against her will."

The instruction says the "character of the witness may be called in question." So it may, but character for what? The instruction is faulty in not designating. If it is to affect the probability of her assenting to the act of sexual intercourse, then it must be a general reputation for chastity that is put in evidence. If it is to affect her credibility as a witness on all points, then it must be her general reputation for untruthfulness and immorality that is adduced.

Under the generic term "immorality," of course, lack of chastity may be included, and where it is shown to be included in the inquiry, then, under our statute, it might affect both the question of the credibility of the witness, and the question of her consent or dissent to the act of sexual intercourse. There was no effort to prove that the prosecutrix had a bad reputation for chastity, specifically. The examination was directed to her general reputation for truth and immorality.

The court gave an instruction on the credibility of the witnesses generally, which was sufficient on that point.

Third. The court excluded all improper remarks of counsel from the jury, and in this way and by its tenth instruction,* we think, removed any prejudice that such remarks might have otherwise produced.

Finding no error the judgment must be affirmed.

---

*NOTE.—The tenth instruction referred to in the opinion as given by the court is as follows:

"10. You must not allow the gravity of the charge, or the fact that the defendant is a negro man and the prosecuting witness a white woman, to in any way sway or bias your judgment in your deliberations upon a verdict. You must look alone to the evidence in this case, and from it make your decision. The defendant is entitled to your calm, unbiased and deliberate judgment upon the truthfulness of the charge against him. He is presumed by the law to be innocent, and this presumption is evidence in his behalf, and protects him from a conviction until his guilt is established beyond a reasonable doubt. If, therefore, you have a reasonable doubt of the defendant's guilt, after a careful and unbiased consideration of all the evidence in the case, you must resolve that doubt in his favor, and return a verdict of not guilty."—REPORTER.