### MOORE v. STATE.

#### Opinion delivered October 13, 1913.

1. HOMICIDE—SELF-DEFENSE—USE OF WEAPON UNLAWFULLY CARRIED.— While a person may use in his necessary self-defense a weapon which he is carrying unlawfully, an instruction is properly refused which says that appellant had a right to go to the place when she believed deceased (her husband) was staying with another woman, "and to carry with her a weapon to defend herself against any possible attack," because such instruction is argumentative, and is objectionable because it permits one who is expecting trou-

ble, and probably looking for it, to be armed and ready for it when it comes.  (Page 478.)

2.  HOMICIDE—SELF-DEFENSE.—When appellant fired four shots at deceased, if the first two were fatal and fired in her necessary self-defense, the fact that she fired two other ineffective shots, would not deprive her of the right to plead self-defense against the fatal shots.  (Page 478.)

3.  INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTION COVERED BY OTHER GIVEN INSTRUCTIONS.—It is not error to refuse to give an instruction at appellant's request which properly states the law, when the court has given another instruction which exhaustively covers the law of the case.  (Page 478.)

4.  NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial upon the ground of newly discovered evidence is properly refused, when the new evidence is merely cumulative to other testimony, and in the absence of a showing why, with any diligence, the thing sought to be proved by the new evidence, could not have been proved at the first trial.  (Page 479.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

*Jones & Owens,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

SMITH, J.  Appellant was indicted for the crime of murder in the second degree, alleged to have been committed by shooting her husband, Arthur Moore, and upon her trial she was convicted of voluntary manslaughter and sentenced to two years' imprisonment in the penitentiary.

On the 24th of February, 1913, appellant, a negro woman, went to a house of ill repute in the segregated portion of the city of Little Rock, where she found her husband in the company of a negress named Mary Johnson.  Appellant says she went to this house to persuade her husband to leave there and return home with her, but that her husband became angry, coaxed her into an alley adjoining the house, and there attacked her with a knife, telling her he would cut her, cursed her, and was about to stab her with the knife when she drew a revolver from her bosom and fired twice, and that deceased then dropped the knife and turned to flee, running out of the

alley across the street, and fell dead on the sidewalk. That she then went down the alley in the direction deceased had gone, firing two shots about the time she came out of the alley. She further testified deceased had threatened to kill her if she came to this house for him, that he had beaten her on several occasions, and was a large and powerful man, without regular occupation, and spent his time gambling and in places of bad repute; and had been frequently confined in jail. Appellant offered evidence tending to corroborate her in several particulars. It developed that the two first shots both struck the deceased, one striking him in the face and the other in the back part of the shoulder.

The evidence upon the part of the State was to the effect that deceased was unarmed and that defendant went to the house for the purpose of killing her husband; that when she had shot him she said, "I killed my husband here, I did, he is my husband;" and, when asked why she killed him, she said: "I am the one that done the shooting; I'd soon not to have no man at all than have half a man."

Without reviewing the evidence in detail, it is sufficient to say that while, according to the evidence on the part of appellant, she fired in her necessary self-defense and should have been acquitted, on the other hand the proof on the part of the State is that the killing was committed deliberately, and the jury tempered justice with mercy because of the circumstances under which the killing was done.

A number of questions are presented by counsel for appellant, which were either not properly saved at the trial, or are not now regarded as prejudicial, or of sufficient importance to require discussion.

Appellant strenuously insists there should be a reversal because of the court's refusal to give instructions numbered 1 and 3, asked in her behalf. These instructions are as follows:

No. 1. "You are instructed that if you believe from the evidence in this case that defendant saw her husband

(this deceased) in the early part of the evening, on the night of the killing, in company with another woman, as she described, she had at least a legal right to interfere and separate them, and that she had a legal right to go to the home where she believed they were staying and to carry with her a weapon to defend herself against any possible attack; and, further, while in an effort to persuade her husband to return home she was attacked by him, she had a perfect right to shoot in her own defense, and should therefore be acquitted.''

No. 3. ''If you find from the evidence that defendant fired the first two shots to protect her own life, or to prevent great bodily harm being done her, and that the first two shots were the ones that caused the death of deceased, and though she fired two other shots even after deceased had turned to flee, but that the last two shots neither contributed to nor hastened on the death of deceased, then your verdict should be an acquittal.''

The first instruction is not the law. It is true that one may use in his necessary self-defense a weapon which he is carrying unlawfully; that is, he is not to be deprived of his right to use a weapon in his necessary defense because he is carrying it unlawfully. But this is not the purport of the instruction, for it says: ''She had a legal right to go to the home where she believed they were staying and to carry with her a weapon to defend herself against any possible attack.'' This instruction, besides being open to the objection that it is argumentative, is subject to the more serious objection that it permits one, who is expecting trouble, and probably looking for it, to be armed and ready for it when it comes.

The third instruction is more nearly correct, and might well have been given. If the first two shots were the fatal shots and were fired in her necessary self-defense, the fact alone that she fired other shots, which neither contributed to nor hastened the death of deceased, would not deprive her of the right to plead self-defense against the fatal shots. But the court gave an

extended charge and covered the law of self-defense exhaustively; in fact, appellant complains of the very length of the court's charge, and the jury was correctly told in the plainest terms when the right of self-defense might be exercised in accordance with the principles announced in many decisions of the court.

It was also urged as a ground for a new trial that appellant could produce some newly-discovered evidence in regard to the finding of the knife in the alley, and to the effect that there were slits in the cloak which appellant wore on the night of the killing. The evidence in regard to finding the knife was cumulative to other testimony, and there is no showing why, with any diligence, the cuts in the cloak could not have been proved at the first trial. Moreover, nothing appears of this newly-discovered evidence except in the motion for a new trial, and, as was said in the case of *Cravens* v. *State,* 95 Ark. 325, "We can not consider this alleged assignment of error. The bill of exceptions does not show that such testimony was offered to be introduced by the defendant. It is true that such appears to be the case from the motion for a new trial, but motions for a new trial can not be used to bring into the record that which does not otherwise appear of record." Here nothing appears in the record in regard to this new evidence except the statements in regard to it found in the motion for a new trial.

Upon the whole case, we think appellant had a fair trial, free from prejudicial error, and the judgment of the court below is accordingly affirmed.