Bradshaw *v.* State.

4336                                    176 S. W. 2d 912

Opinion delivered January 17, 1944.

Fred A. *Isgrig* and Floyd *Terral,* for appellant.

Guy E. *Williams,* Attorney General, and Oscar E. *Ellis,* Assistant Attorney General, for appellee.

McHaney, J. Appellant was charged by information with murder in the first degree for the unlawful killing of Seaman First Class Robert B. Dexter, by striking and beating him with a black jack. On a trial he was convicted of voluntary manslaughter and sentenced to a term of five years in the state penitentiary.

For a reversal of this judgment, appellant first contends that the evidence is insufficient to support the verdict and judgment against him. At the time of the killing, night of June 4, 1943, appellant was operating a restaurant at 13th and Main streets, in Little Rock. Dexter and three other seamen or sailors in the naval service of the United States went into appellant's place of busi-

ness. They had been drinking and had consumed two-fifths of a gallon of whiskey at another restaurant about four blocks away, and were somewhat intoxicated, were noisy and creating a disturbance. They ordered and were served 10 glasses of beer, some of which was knocked off the table onto the floor. Appellant attempted to quiet them, but when he did not succeed by peaceable means, he undertook to do so by force, or to eject them. He took a black jack, which he kept handy in a drawer near the cash register, went back to the booth where the sailors were, and, according to the testimony of Reva Walley, who was in the restaurant at the time, as abstracted by appellant, the following occurred: "One of the sailors came around and stood by Mr. Bradshaw, at which time the waitress pushed the sailor back trying to make him sit down or stand up and listen. The sailor did not like the waitress pushing him and just pushed her back or hit her. The witness heard two or three blows struck. When the first sailor pushed the waitress around Mr. Bradshaw hit him on the back of the head, then the large sailor, Dexter, started taking it up. She did not see him hit Mr. Bradshaw, but she saw him start at Mr. Bradshaw, at which time Mr. Bradshaw started beating on him. After Bradshaw started hitting Dexter, Dexter started toward the door during which time Mr. Bradshaw was beating him over the back of the head with a blackjack. Finally Mr. Bradshaw knocked him down and hit him two or three times, after he was on the floor." Another witness, Sutton, testified that he was in the restaurant at the time, saw appellant talking to the sailors, saw the waitress slap one of the sailors and the sailor slapped her, "then Mr. Bradshaw went into action with the blackjack. He hit the sailor who had slapped the waitress and then hit the big sailor, Dexter, and got him in the collar and rode him to the front door. Mr. Bradshaw was holding the sailor and hitting him over the head with the blackjack, finally knocking him down. When the sailor was down he hit him again although witness could not say how many times." Appellant's abstract.

Counsel concede that this testimony, and there was a lot more to the same effect, is substantial and would

be sufficient to support the verdict, but for testimony of Major Ellis, laboratory specialist, at Camp Robinson Hospital, who performed an autopsy on Dexter's head the next day and found only two wounds, one in the left temple which produced a skull fracture, resulting in a hemorrhage on the surface of the brain, causing his death; and a small scalp wound on the upper right rear of the head. These were the only marks on the head. It is contended that the testimony quoted above is in conflict with the physical facts as related by Major Ellis and for that reason should not be believed. This and all other testimony was for the jury's consideration and determination. But, if it be conceded that Dexter was not beaten as described by these and other witnesses, there was still sufficient evidence to support the verdict. The other sailors testified in effect that appellant hit Dexter without provocation. It was not appellant's duty to take the law in his own hands and be judge, jury and executioner. The police were available, both city and military. If he knew the sailors were intoxicated when they entered, it was his duty to refuse to sell them more intoxicants. He should have invited them to leave, and, if they refused, he could call on the police to eject them. We conclude there was ample evidence to support the verdict, especially since we must view it in the light most favorable to the verdict.

It is next argued that the court erred in refusing to give appellant's requested instructions Nos. 5, 7, and 9. We do not set them out, as to do so would unduly extend this opinion to no useful purpose. The court gave 32 instructions in the case, apparently covering every phase of the law of homicide, and we agree with the Attorney General that the requested instructions were substantially covered in other instructions given.

It is finally insisted that the judgment should be reversed because of the applause by the audience in the courtroom at the close of Mr. Robinson's closing argument for the state and the remarks of the court in connection therewith. When the audience applauded Mr. Robinson, the court said: "Gentlemen of the jury, it be-

comes the duty of the court to admonish the people sitting here that that was highly improper and to the jury tends to be highly prejudicial. You must disregard that —you must do so because it could be a reversible error. These people do not understand the courts and the laws governing the action in them and have therefore made a mistake. I know you will disregard it and not have any feeling of prejudice in your minds. I am quite sure the jury will give this man a fair and impartial trial. I think I had better poll the jury. I want you gentlemen to answer this: Are you prejudiced or influenced in any way by this demonstration in the courtroom by the audience?

"(At this time each juror was called individually and each gave his answer to the question in the negative.)

"The Court: I consider I have asked each one of you. I see you are shaking your heads, 'no.' The court repeats the admonition that that was highly improper. It practically destroyed the labor of two days here. It is a reversible error. The people who did that are numerous, but the court could undertake to punish them. However, I am not going to do anything about it as they were not posted on procedure in a courtroom. You, gentlemen, give this man a fair and impartial trial. Be back at 12 o'clock with some sort of report to give the court."

No objection to the remarks of the court in this connection was made by appellant and no exception saved, but he did move the court to declare a mistrial, which was refused. In L. R. A. 1918E, in an annotation on p. 959, it is said: "The rule laid down in a number of cases cited in the earlier note, that the misconduct of a spectator in open court during the progress of a criminal trial furnishes no ground for reversal, where the trial judge took the proper steps to prevent a repetition of the same and it did not appear that the jury were influenced thereby to the prejudice of the defendant, was applied in the following cases, where spectators in the court room applauded remarks of the State's attorney, or statements of witness for the prosecution"; our own case of *Rhea* v. *State*, 104 Ark. 162, 147 S. W. 463, among others from a

number of courts of other jurisdictions is cited as so holding. We conceive this to be the effect of the holding in that case, as also in the later cases of *Zinn and Cheney* v. *State,* 135 Ark. 342, 205 S. W. 704, and *Pendergrass* v. *State,* 157 Ark. 364, 248 S. W. 914. It is conceded that such is the correct rule and that the burden was on appellant to show that he was prejudiced by the "ill-advised applause of some persons in the audience," Rhea case, *supra.* But it is insisted that the remarks of the court constituted a finding "that the demonstration was highly prejudicial to the rights of defendant and had deprived him of a fair trial." We cannot agree that this is true. The audience was admonished that the applause "was highly improper and to the jury tends to be highly prejudicial," not that prejudice did result. "You (the jury) must disregard that—you must do so because it could be reversible error." Later he repeated the admonition to the audience "that that was highly improper. It practically destroyed the labor of two days here. It is reversible error." These remarks, while made in the presence of the jury, were addressed to the offenders in the audience and not to the jury. It was not meant that it was reversible error in this case, because the court had already told the jury they must disregard it, and if they did not it could or might be error. Also the jury was polled on the question and each answered that he was not prejudiced or influenced in any way by the demonstration.

We think appellant has wholly failed to show any prejudice as a result of the applause. No request was made of the court further to admonish the jury or to reprimand the offenders, and no objection was made thereto. It is difficult to perceive how the court could have done more than was done here to preserve appellant's rights. The burden being on appellant to show prejudice, and none being shown, we cannot sustain this assignment of error.

We find no prejudicial error, so the judgment is affirmed.