GRIFFIN v. STATE.

4417                                    196 S. W. 2d 484

Opinion delivered September 30, 1946.

*Ben M. McCray,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

ROBINS, J. Appellant, Beulah Griffin, charged by information with the offense of murder in the first degree alleged to have been committed by shooting to death Helen Mason, another negro woman, was by a jury convicted of voluntary manslaughter and her punishment fixed at two and one-half years confinement in the penitentiary. She has appealed.

For reversal it is first urged by appellant that the verdict was not supported by any substantial testimony.

Appellant admitted doing the shooting, but claimed that she fired in self-defense and that she intended not to kill Helen, but only to stop her in her hostile advance upon appellant. At the time of the difficulty, appellant was operating a restaurant in the negro section of Benton, Arkansas. Helen had been patronizing appellant's place of business and a dispute arose as to an alleged overcharge in Helen's bill.

Sonny Green, a witness for the state, testified that he was asleep in a little back room of appellant's cafe when the trouble between appellant and deceased began and that appellant requested him to call the officers; that appellant said to Helen twice: "Don't follow me"; and Helen said to appellant: "Please give me my dollar and a half"; that the gun was then fired; that he saw nothing in Helen's hand; that when he went to phone the officers Helen put her hands on him, but he pushed her back.

The coroner testified that he found Helen's body lying on the floor and that she died from a bullet wound either in the heart or "the big artery of the heart"; that Helen had nothing in her hands except a paper sack which was clutched in her left hand and which contained an old, thin rayon dress rolled up and a skirt rolled up in another paper sack. There was no proof that Helen had any weapon at the time of the killing.

Appellant testified in substance: That Helen, after having previously asserted that she had been overcharged by appellant, came back to appellant's cafe. "She said 'Do you intend to pay me my dollar and a half or not'?, and I said 'I haven't got it'. She was cursing and said 'Do you not intend to pay me'?, she kept on from word to word and she said, 'You don't intend to pay it' and at that time she picked up a pepper sauce bottle, it was a fruit jar, and she drew it back. I said 'I have been awful nice to you, you have worn my things and I have given you show fare', and explained the nice things I had done as nice as a person could. She said 'I don't give a damn, I don't care', she cursed and said 'I don't give a so-and-so, I am going to have my so-and-so money'. While she was talking she set the pepper sauce bottle down and that is when I went and called Sonny Green. She meant business and she meant to do something to me and I went to call Sonny to call the police. I thought probably she would hit me with the jar while talking to the police and after I got Sonny up he went in and tried to call the police and I taken advantage of it and when she went to the telephone where he was that is when I started around to get to the kitchen and she said 'you needn't get that gun'. She said 'I am not afraid of you, and you are going to give me the . . . dollar and a half or I intend to get it' and she was coming down the counter to me. I had gone into the kitchen and was standing against the table and she said 'I mean you are going to give me the . . . money'. I said 'I don't want to hurt you and I don't want you to hurt me'. She said she was going to get the . . . money and I got the gun and pulled the trigger back and I said 'if you keep coming', and she said 'You yellow . . ., you ain't got the nerve to shoot me'. I said 'I don't want to shoot you, but one thing I don't want you to hurt me'. She continued on and after she got to the ice cream she kept on coming as short as from me to that man. I said 'I am not trying to scare you, you had better not make another step', and I shot her, I meant to stop her I didn't mean to kill her."

Several witnesses testified that Helen was quarrelsome and bore a bad reputation, and it was shown that

appellant had the reputation of being a peaceful and industrious woman.

When the correctness of a verdict of guilty is being considered by us on appeal the testimony must be given its strongest probative force in favor of the state. *Higgins* v. *State,* 204 Ark. 233, 161 S. W. 2d 400. Applying this rule in appraising the testimony, we conclude that there was substantial evidence in this case upon which the jury might base a finding that appellant slew the deceased, not because of an honest belief that appellant was in danger of being killed or receiving serious bodily injury, but because of sudden and irresistible anger aroused in appellant because of Helen's boisterous and offensive conduct. The jury evidently took this view of the testimony and it therefore properly found appellant guilty of voluntary manslaughter; and the reputation of the appellant was doubtless given due consideration by the jury in assessing the punishment.

It is next urged by appellant that the lower court erred in refusing to give appellant's requested instruction No. 4, which dealt with the matters of burden of proof and presumption of innocence. The court correctly gave the law as to this phase of the case in several instructions, particularly appellant's requested instructions Nos. 2, 3, 6-B, 8 and 11. We have often said that it is not necessary for the trial court to multiply instructions by repeating in substance the same declaration of law. *Sweeney* v. *State,* 35 Ark. 585; *Carroll* v. *State,* 45 Ark. 539; *McCoy* v. *State,* 46 Ark. 141; *Lee* v. *State,* 56 Ark. 4, 19 S. W. 16; *Maxey* v. *State,* 66 Ark. 523, 52 S. W. 2; *Richardson* v. *State,* 80 Ark. 201, 96 S. W. 752; *Jones* v. *State,* 105 Ark. 698, 152 S. W. 161; *Moore* v. *State,* 109 Ark. 475, 160 S. W. 206; *McCown* v. *State,* 125 Ark. 597, 188 S. W. 547; *Burns* v. *State,* 155 Ark. 1, 243 S. W. 963; *Sutton* v. *State,* 162 Ark. 438, 258 S. W. 632; *Hicks* v. *State,* 193 Ark. 46, 97 S. W. 2d 900; *Lee* v. *State,* 200 Ark. 964, 141 S. W. 2d 842; *Herron* v. *State,* 202 Ark. 927, 154 S. W. 2d 351; *Bradshaw* v. *State,* 206 Ark. 635, 176 S. W. 2d 912; *Trotter* v. *State,* 206 Ark. 690, 177 S. W. 2d 173.

It. is finally argued by appellant there was error in the refusal of the lower court to give appellant's requested instruction No. 12, defining appellant's right of self-defense; but we find that in instructions Nos. 9, 10, 10-A, and 13, given at the request of appellant, the court fully and properly charged the jury as to the law of self-defense.

No error appearing, the judgment of the lower court is affirmed.