## HOLDER *v*. STATE.

### Opinion delivered February 17, 1894.

1. *Homicide—Motive.*
   Where one is indicted for killing his wife, it is admissible to prove, as a motive for the crime, that he had been improperly intimate with another woman.

2. *Cross-examination of defendant—Impeachment.*
   Where defendant testifies in his own behalf, he may, on cross-examination, be asked whether he had been confined in the penitentiary of another State, and what caused him to leave this State about two years previously, provided the answer to the latter question does not criminate him; but he may not be asked whether he had committed rape in one State five years previously or left another on account of debt—the first question tending to incriminate and the second relating to a matter not affecting his credibility.

3. *Instruction—When contradictory.*

> An instruction, in effect, that, though the facts proved are consistent with defendant's innocence, the jury are not bound to acquit unless they have a reasonable doubt of his guilt, is erroneous.

4. *Misconduct of prosecuting attorney in argument.*

> The prosecuting attorney asked the defendant on cross-examination whether he had committed rape in another State, and left there for that reason ; to which defendant replied in the negative. In his argument before the jury, the prosecuting attorney persisted in repeating that he had reliable information on which he asked the question, after the court had mildly reproved him for making the statement, and had told the jury that " they should consider only the law as given them, and the evidence of the witnesses, in arriving at a verdict." *Held*, that the conduct of the prosecuting attorney was prejudicial error.

Appeal from Clark Circuit Court.

RUFUS D. HEARN, Judge.

*John E. Bradley* and *Dan W. Jones & McCain* for appellant.

1.   The evidence does not support the verdict.   If two theories are equal in soundness, then the doubt and presumption of innocence must prevail.   Guilt must be established by sufficient evidence.   Wills, Circ. Ev. 194. Appellant's declarations in evidence satisfactorily explain all his conduct.   85 Cal. 39; 38 Mich. 125.   There was a reasonable doubt of defendant's guilt.   38 Mich. 482. Strong probabilities of guilt are not sufficient.   *Ib.* The utmost strictness of construction prevails in favor of life and liberty.   41 Wis. 299; *Com.* v. *Webster*, 5 Cush. 320 ; 89 Mo. 282.   Malice and motive for the crime are utterly lacking.   49 N. Y. 137.   If the facts be consistent with innocence, they are no proof of guilt. 53 N. Y. 475; 28 Hun, 593; 54 Barb. 309; 127 Mass. 424; 34 Am. Rep. 491; 32 Ark. 238.

2.   The evidence of Bromlett, Foster and Duff was irrelevant.

3. It was error to allow the State's attorney to ask improper questions on cross-examination of defendant. 78 Ala. 474; 79 *id.* 21; 87 *id.* 103; 87 Ill. 210; 96 Ill. 492; 79 Mich. 110; 50 N. Y. 240; 72 N. Y. 571; 76 N. Y. 288; 66 Me. 116; 67 Miss. 333; 68 Cal. 101; 76 Mo. 350; 14 Ore. 300; 88 Mo. 88; 81 *Id.* 231; 12 Ore. 99; 75 Mo. 171; Whart. on Hom. secs. 736, 737, 738. The comments of the State's attorney were prejudicial. 76 N. Y. 288 and cases *supra.* It was not enough to mildly admonish the State's attorney, but the court should have charged the jury specifically upon the improper remarks. 78 Ga. 596; 54 Vt. 83; 88 Mich. 456; 51 *id.* 227; 62 *id.* 643; *Ib.* 356; 57 *id.* 506; 49 Ind. 33; 59 Mich. 552; 44 Mo. 238; 24 Kas. 252; 65 N. C. 563; 65 N. C. 505; *Ib.* 369; 79 Cal. 415; 56 Ind. 186; 62 Iowa, 108; 19 Or. 397; 4 Am. & E. Enc. Law, p. 876 and notes; 17 S. W. Rep. 402; 18 *ib.* 1003; *Ib.* 583.

4. It was error to modify instruction No. 5 asked for defendant. As modified it was erroneous.

*James P. Clarke,* Attorney General, and *Chas. T. Coleman,* for appellee.

The questions asked by the State's attorney were not improper. The answers thereto affected the witness' credibility. The defendant takes the stand on the same footing as any other witness. 56 Ark. 7; 46 *id.* 141; 95 Ill. 407; 105 *ib.* 414; 37 Oh. St. 178; 42 N. Y. 265; 97 Mass. 588; Whart. Cr. Ev. sec. 474; 1 Bish. Cr. Pro. sec. 1185; 53 Ark. 387; 26 Pac. Rep. 749; 19 Mich. 170; 100 Mo. 606. A witness, on cross-examination, in order to discredit him, may be asked if he had not committed perjury in another State. 1 Jones, (N. C.) 526. Or convicted of felony. Busbee, (N. C.) 358; 42 N. Y. 270. Or if he had been in the penitentiary. 100 Mo. 606; 24 S. W. Rep. 100. See also 20 Oh. St. 460; 97 Mass. 588; 36 Kas. 92; 16 Mich. 43.

BATTLE, J. Appellant was indicted for and convicted of murder in the first degree, alleged to have been committed by killing his wife, Mary Holder, by means of poison, on the 24th of February, 1893; and was sentenced to be hung on the 16th of November following.

He brings the record of his trial and conviction to this court, and asks that the judgment which was rendered against him be reversed.

1. Motive of homicide may be proved.
One of the grounds upon which he asks for a reversal is the admission of the testimony of Gilbert Bromlett and Henry Foster, which tended to prove that an improper intimacy existed between himself and a woman named Frances Carter, alias Daus Ball. The testimony was properly admitted, as it tended to show that he had ceased, at the time of his wife's death, to be a loyal and devoted husband, and that he was induced to kill his wife in order to prevent any disturbance of the illicit relations existing between him and his paramour. The testimony of Agnes Duff, to which the appellant lant objected, was also admissible because it tended to strengthen that of Gilbert Bromlett and Henry Foster. She testified that she had often seen appellant, in the year previous to the 6th of September, 1893, the day of the trial of this cause, visiting the house occupied by Daus Ball and her mother.

2. As to the cross-examination of defendant.
Appellant insists that the trial court erred in allowing the State to propound to him improper questions while he was testifying. The appellant, among other things, testified in his own behalf that he "ran away from home in the summer of 1891, and went back to Mississippi, where he stayed several months; that Mississippi was his old home, and he was there among his 'kin people'; and that he moved from Mississippi to Texas in 1884, stayed in Texas four years, and then moved to this State." On cross-examination, the State,

over the objections of appellant, asked him these questions, and he answered them as follows :

"1. Question. How came you to leave Texas?

"Answer. I left there because I thought I could make more money in Arkansas.

"2. Q. Did you not run away from there when you came to this State?

"A. No, I did not.

"3. Q. Is it not a fact that you left there because there was a mob after you?

"A. No, there was no mob after me.

"4. Q. Is it not a fact that you were in the penitentiary in Texas?

"A. It is not a fact.

"5. Q. Is it not a fact that you had committed rape in Texas, and left there for that reason?

"A. It is not a fact.

(The court instructed the jury not to consider the last named question and answer as evidence in the case.)

"6. Q. Why did you leave Mississippi.

"A. Because I became involved in a security debt which took all I had to pay out, and I wanted to go somewhere else, where I could take a new start.

"7. Q. Did you leave there because you were in debt?

"A. No, I left there because it took all I had to pay my security debts.

"8. Q. What had you done when you left this State in 1891?

"A. I left because I had got into trouble with another colored man. He came onto me with a piece of scantling, and crowded me so close that I had to cut him, and I left because I was advised by the friends of the other man to do so. I went to Mississippi, and stayed there several months; then came back, stood my trial, and was acquitted."

When a defendant in a criminal case becomes a witness in his own behalf, he is subject to cross-examination and impeachment like any other witness. *McCoy* v. *State*, 46 Ark. 141 ; *Lee* v. *State*, 56 Ark. 7.

In *Wilbur* v. *Flood*, 16 Mich. 43, Mr. Justice Campbell, in delivering the opinion of the court, said: "It has always been held that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But within this discretion we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility, and it is certain that proof of punishment in a State prison may be an important fact for this purpose."

In *Hollingsworth* v. *State*, 53 Ark. 390, Mr. Justice Hemingway, speaking for the court, said: "It is always competent to interrogate a witness on cross-examination touching his present or recent residence, occupation and associations ; and if, in answer to such questions, the witness discloses that he has no residence or lawful occupation, but drifts about in idleness from place to place, associating with the low and vicious, these circumstances are proper for the jury to consider in determining his credibility. That such a life tends to discredit the testimony of the witness, no one can deny ; when disclosed on cross-examination, it is exclusively for the jury to determine whether any truth can come from such source, and, if so, how much."

As a general rule, a witness is not compellable to answer a question when the answer to it will tend to expose him to a penal liability, or to any kind of punishment, or to a criminal charge. When such questions are asked it is the duty of the court to inform the wit-

ness of his right to decline to answer, but it should not prevent him from answering if he chooses. 1 Greenleaf on Evidence, sec. 451; *Pleasant* v. *State*, 13 Ark. 378; S. C. 15 Ark. 649. But this rule does not apply to defendants in criminal cases, as to accusations against them, when testifying in their own behalf. In such cases they are required to testify as to the charge in the same manner as other witnesses.

The statutes of this State permit the impeachment of a witness by showing by his own examination that he has been convicted of a felony. Mansfield's Digest, sec. 2902.

The first, second, third and fifth questions seemed to have been asked with the view of showing that the appellant had left Texas because he had committed rape, and because he was afraid to remain. They were not admissible for that purpose. He could not be compelled to criminate himself in such a manner. His removal from Texas to Arkansas occurred about five years before he testified, and was too remote in time to form the subject of a cross-examination. 1 Greenleaf on Evidence, section 459. The fact that a mob was in pursuit of him at the time he left could not legally affect his credibility unless it could be shown that some criminal act of his own had caused the mob, and that could not be shown by his own testimony without criminating himself. It was proper to ask him if he had been confined in the penitentiary of Texas, as that tended to show that he had been convicted of an infamous crime, had been disgraced, and had not the inducement to tell the truth that he would have if he had not been made infamous. The sixth and seventh questions, asked for the purpose of showing that he left the State of Mississippi on account of debt, were improper. The fact he was in debt did not affect his credibility. The eighth was proper, provided the answer to the same did not criminate, and, it

appears, it did not. But he was not prejudiced by the questions objected to; and no reversible error was committed by requiring him to answer.

3. Instructions should not be contradictory.

The appellant asked the court to instruct the jury as follows: "The court instructs the jury that the facts relied upon to show the defendant's guilt must not only be consistent with and point to his guilt, but they must be inconsistent with his innocence; and if such facts are susceptible of two interpretations, one of innocence and one of guilt, the interpretation of innocence must be accepted in the defendant's behalf." And the court amended it by adding the following words: "Provided you have a reasonable doubt of defendant's guilt," and gave it as amended. The court thereby virtually told the jury that, although the facts proved were consistent with defendant's innocence, they were not bound to acquit unless they had a reasonable doubt of his guilt; in other words, that this state of facts did not necessarily leave room for a reasonable doubt. This was error. The instruction as amended was inconsistent with and contradictory to other instructions which were given, and is nowhere explained, and was calculated to mislead the jury to the prejudice of the appellant.

4. Misconduct of prosecuting attorney.

In his argument before the jury the attorney for the defendant called the attention of the jury to the fact that while the attorney for the State was asking the questions we have set forth in this opinion, he held in his hand in plain view of the jury what appeared to be a letter, and referred to it, when he was asking the questions, as if reading it, and said that this act of the State's attorney was "an artful effort" to impress the jury with the idea that the questions were based on facts, and warned them against being misled. The attorney for the State, in his reply, began to comment on these questions and the answers to them, when the

defendant objected, and the court informed him that his remarks were improper, and instructed the jury not to consider them; "whereupon the State's attorney informed the jury that he had not asked these questions with the paper in his hands for mere buncombe, but that he had reliable information from other sources for asking the questions, or he would not have done so." To which the defendant objected, and the court instructed the jury "that they should consider only the law as given them, and the evidence of the witnesses, in arriving at a verdict." Appellant insists that he was prejudiced by the remarks of the State's attorney, and the judgment of the trial court should, therefore, be reversed.

The action of the attorney for the State was highly reprehensible. A prosecuting attorney is a public officer "acting in a *quasi* judicial capacity." It is his duty to use all fair, honorable, reasonable and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted to such a purpose.

In the case before us the prosecuting attorney was provoked by the attorney of the defendant to defend his examination of the defendant while he was on the wit-

ness stand.    The court admonished him that his re-
marks were improper, and instructed the jury not to
take them into consideration.    This, under the circum-
stances, might have been sufficient, if he had heeded the
admonition of the court, and refrained from making fur-
ther remarks of like character.    But he still persisted
in the course he had taken ; and the court, for the
second time, instructed the jury " that they should con-
sider only the law as given them, and the evidence of the
witnesses, in arriving at a verdict."    The prosecuting
attorney, doubtless, did not intend to commit a wrong,
but upon the impulse of the moment sought to defend
himself against the attack of opposing counsel.    He did
wrong.    He should have desisted from continuing the
objectionable remarks when the court admonished him
that they were improper.    But he did not.    Under such
circumstances, the administration of justice, the enforce-
ment of the laws, the dignity and authority of the court
demanded a severer penalty for the wrong than a mild
rebuke.    The provocation was no excuse or justification.
A punishment sufficient to impress the jury with the
fact that the remarks were improper, and should not be
considered by them, to command respect, and to maintain
the dignity and authority of the court, and to prevent a
repetition of the offense, however unpleasant to the
court, should have been imposed.

The appellant was accused of having caused his
wife to take the poison which caused her death, and the
evidence adduced at the trial tended to prove the accusa-
tion.    His testimony offered the only explanation, con-
sistent with his innocence, as to how she was poisoned ;
and his acquittal depended in a large measure, if not
solely, on his credibility.    The remarks of the prosecu-
ting attorney, if believed, tended to discredit him.    How
far they did so depended on the credence the jury gave
to them.    Coming from a person occupying the position

of prosecuting attorney, and apparently founded on the letter to which he referred when he cross-examined the defendant, they were well calculated to prejudice the appellant in his trial before the jury.  The persistence of the State's attorney in defending his action by the assertion that he had reliable information, from sources other than the letter, as to the subject matter of his cross interrogatories increased the prejudice by causing the jury to give less weight to appellant's testimony. They might have thought he was warranted in doing so on account of reliable information he had received, from the fact he earnestly insisted, in defiance of the court, that he had been reliably informed that that which his interrogatories implied was true.

As a general rule, "an objection by the opposing counsel, promptly interposed, followed by a rebuke from the bench, and an admonition from the presiding judge to the jury to disregard prejudicial statements," is sufficient to cure the prejudice.  But when we consider the earnest, persistent and vigorous manner in which the prosecuting attorney attacked the credibility of the defendant by assertions and means unsupported by the evidence, and the mild reproof of the court, we are not prepared to say that the prejudice was cured in this case.  In view of the fact that the court in an instruction told the jury that they were the "illimitable judges" of the credibility of the witnesses, it is probable it was not. Upon a view of the whole case, we think that the appellant is entitled to a new trial.

The judgment of the circuit court is, therefore, reversed, and the cause is remanded for a new trial.