Henry TIMMONS *v.* STATE of Arkansas

CR 84-207                                            688 S.W.2d 944

Supreme Court of Arkansas
Opinion delivered May 13, 1985

*William R. Simpson, Jr.*, Public Defender; *Arthur L. Allen*, Deputy Public Defender; and *Thomas J. O'Hern*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Joyce Rayburn Greene*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was convicted of rape [Ark. Stat. Ann. § 41-1803 (Repl. 1977)] and sentenced to 60 years imprisonment. On appeal he argues the prosecuting attorney engaged in prejudicial tactics and arguments during the course of the trial. We agree with appellant's argument and reverse and remand.

The appellant attended a party at the victim's house. According to the victim the appellant returned to her residence after the other guests had left and repeatedly raped her. She further testified that when she ran from the house to escape he overtook her and raped her several more times. One witness called by the state during the trial was a forensic serologist with the state crime laboratory. The doctor who examined the victim did not testify at the trial. At a pretrial conference, it was agreed by the state and the appellant that the serologist witness could not connect the chain of custody about the materials she had examined. During the trial, the state called the witness and the appellant objected to her testimony. At that point the state again admitted that it could not establish the chain of custody. Over the objection of appellant the state asked: "Did you have an occasion to examine some items submitted to you from [the prosecuting witness]?" The court then sustained the objection. A request for a mistrial was denied.

During the closing argument the state's attorney stated he had put the serologist witness from the crime lab on the stand and the appellant had objected to her testimony. He also referred to her testimony. The court instructed the jury not to consider the statement by the state's attorney about a witness who did not testify.

The question to be decided is whether it is prejudicial to allow the state to call a witness to the stand when it is already known that the witness cannot give valid relevant testimony and then argue to the jury that it was the appellant who prevented the jury from hearing the evidence. We hold that under the circumstances of this case it was prejudicial.

We have long held that a prosecuting attorney should not be tempted to appeal to prejudices, pervert testimony, or

make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a conviction by arguments except those which are based upon the evidence in the case. *Holder* v. *State*, 58 Ark. 473, 25 S.W. 279 (1894). In the more recent case of *Dean* v. *State*, 272 Ark. 448, 615 S.W.2d 354 (1981), we reversed the conviction because the state's attorney asked a witness a question which was in reality testimony by the prosecutor. The precise question, addressed to a psychiatrist who had examined the defendant, was: "Okay. Let's—Do you recall telling me in our telephone conversation that the defendant would be very likely to do this sort of thing again?" In *Dean* the court sustained the objection and denied the request for a mistrial. We are in the same posture now as we were then. In keeping with our precedent we are bound to reverse. Our most recent pronouncement on prosecutorial misconduct is found in *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985). In *Foster* the state called an accused accomplice knowing she would invoke her Fifth Amendment rights. The present case is almost identical.

We cannot say with any degree of certainty that the error was not prejudicial to the appellant. In fact, it is quite clear that this conduct was prejudicial and could not have been corrected by anything less than a new trial. Accordingly the case is reversed and remanded for a new trial.

Reversed and remanded.

HICKMAN, J., concurs.

HAYS, J., dissents.

DARRELL HICKMAN, Justice, concurring. The prosecuting attorney deliberately offered evidence which was misleading and inadmissible. In my opinion the judge realized later he should have stopped the prosecutor or granted a mistrial, but he didn't. The prosecuting attorney attempted to leave the jury with the impression that there was evidence they should be able to consider, but that it was being excluded due to the defendant's objections, which is a highly improper tactic.

Here is what the record shows. First, it was apparently understood before trial that the witness, a serologist, could not testify about her findings after examining the victim. Second, during the trial, the transcript of the state's efforts reads:

[Defense attorney]:
We have stipulated to the lady's qualifications. My understanding is that the State is not going to be able to establish chain of custody on any of the materials that she examined, and I'm going to object to any testimony on her part. We don't have the examining doctor, have we?

The Court:
You may proceed with her examination. If he does make his chain of custody on it, I will allow it to be—

[Prosecutor]:
Tom is correct. *I can't make my chain. It is obvious to the court that I can't, and whenever he objects I'll quit.*

The Court:
All right, sir.

[Defense attorney]:
*I've objected at this point.* If you want to go on—

The Court:
All right.

(The witness continuing.). . . .

Q. Did you have occasion to examine some items submitted to you from Geneva Wiggins?

[Defense attorney]:
I want to enter an objection at this time, your Honor.

The Court (out of hearing of the jury):
Are you going to admit that you can't make it?

[Prosecutor]:
*I can't make it.*

The Court:
The objection is sustained. (Italics supplied.)

After this deliberate effort in front of the jury, over a proper objection, the state was allowed to ask the witness about the items examined.

Third and last, in closing argument, the state again deliberately referred to the objectional evidence:

[Prosecutor]:

The evidence is unrebutted that she went to the Crime Lab for a rape examination. We put Lisa Cooper on the stand, the serologist. He's doing his job. *He objected to her testimony and we did not hear what that was.* He's doing his job.

[Defense attorney]:
Your Honor, I think this is improper argument. And I want to object to it.

The Court:
Ms. Cooper did not testify to anything, Mr. Adams.

[Prosecutor]:
That's correct. I didn't say she did. I said she was put on the stand and she testified as to her job and he objected.

The Court:
That's correct. There's no testimony.

[Prosecutor]:
That's correct.

The Court:
It's not proper for you to refer to it.

[Prosecutor]:
He is the one who said there's no evidence since—

The Court:
That is correct, sir.

[Prosecutor]:
All these things that he objected to—

The Court:
The objection is sustained. You cannot refer to any evidence that was not admitted in this trial.

[Prosecutor]:
I'm not referring to the evidence. I'm referring that she was on the stand and he's the one who objected to it, not me.

The Court:
It is sustained.

[Defense attorney]:
I'm going to have to move for a mistrial also on the

prejudicial nature of reference to evidence that is not before the jury.

The Court:
We'll discuss this after the jury goes out. Go ahead and finish and then we'll take it up in Chambers.

In chambers the following occurred after some discussion and a motion for a mistrial was made:

[Defense attorney]:
I objected to statements that were made in the second closing of the prosecution as making reference to evidence that was not put in trial and which, in effect, in actuality was objected to by the defense and we received a favorable ruling. Our position is that any reference to the serology report which was testified to is improper and is prejudicial to my client as it leaves the jury with the inference that there was objective evidence available of the intercourse which the State was not able to validly get admitted into evidence at the trial.

The Court:
What did you say, Mr. Adams? I missed part of it.

[Prosecutor]:
I don't—you know, I don't think I commented on the report. I simply said that Tommy was doing his job when he objected to her testimony. Now as to what exactly I said I'm not sure.

The Court:
But what you did do was indicate that there was testimony that was objected to.

[Prosecutor]:
No, I just indicated she was on the stand and he was doing his job as the attorney representing his defendant.

The court decided an admonition would cure the error. In my judgment, however, the error was so deliberate and flagrant it could not be cured except by a mistrial; otherwise, the rules of evidence are meaningless.

I concur in the decision.

STEELE HAYS, Justice, dissenting. Without ever saying so, the majority is reversing the trial court for refusing to declare a mistrial because the state made some response in rebuttal to the closing argument of the defense suggesting the state's only evidence of rape was the uncorroborated claim of the prosecuting witness. When the prosecutor referred to the serologist who had examined items submitted by the complainant to the State Crime Lab but was unable to establish a chain of custody, the defense moved for a mistrial, which the trial court denied.

The majority's assumption that the state called the serologist to the stand after having agreed in a pre-trial conference there was no chain of custody of the evidence so it could then argue to the jury that the defense prevented it from hearing the evidence, is palpably incorrect. There was no pre-trial conference on this issue and no indication whatever of an agreement, but a candid acknowledgement by the prosecutor that he could not establish the requisite chain after the defense had made it clear it would object on that basis. Nor did the state discuss the incident in closing until the defense had argued the alleged victim had not undergone a medical examination.

In closing, the defense argued: "But I mention first of all, no medical evidence, *no examination by a doctor saying that she had had the sex*, no indication of trauma to her body, scars or bruises, scratches, nothing, nothing at all to substantiate her claim that she had sex with the man."

The prosecutor answered: "Now, no objective evidence. The evidence is unrebutted that she went to the Crime Lab for a rape examination. We put Lisa Cooper, the serologist, on the stand. [Defense counsel] is doing his job. He objected to her testimony and we did not hear what that was. He's doing his job."

Defense counsel objected and later moved for a mistrial on "the prejudicial nature of reference to evidence that is not before the jury."

I find it impossible to draw any firm conclusions from a printed record concerning this dispute. It is one thing for the defense to point out to the jury there is no *evidence* of a medical examination of the victim, but quite another thing to say that there *was no examination*, when in fact there seems to have been. The trial court heard the exchange, told the jury to disregard any

remarks of counsel having no basis in the evidence and was in a far better position to judge whether the defense invited the comment or whether the state went too far in response. I would leave his decision undisturbed.

We have made it clear in countless cases that reversal of a trial court's ruling on a mistrial motion is a drastic step-appropriate only in the most extreme cases and when the prejudice is so plain the trial cannot in justice continue. *Combs* v. *State*, 270 Ark. 496, 606 S.W.2d 61 (1980); *Back* v. *Duncan*, 246 Ark. 494, 438 S.W.2d 690 (1969). This incident hardly meets that standard.