Artie JACKSON *v.* STATE of Arkansas

CR 06-842                                        249 S.W.3d 127

Supreme Court of Arkansas
Opinion delivered February 1, 2007
[Rehearing denied March 1, 2007.*]

---

* IMBER, J., not participating.

*Jeff Rosenzweig*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Artie Jackson appeals his conviction of sexual abuse in the first degree and sexual assault in the second degree. On appeal, he raises two arguments for reversal: the trial court erred in (1) excluding evidence of the prosecuting witness's motive; (2) failing to grant a mistrial because of improper closing arguments by the State. Because we assumed this case for caseload balance, jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(g). We find no error and affirm.

On September 16, 2005, Appellant was charged with sexual abuse in the first degree and sexual assault in the second degree based upon allegations of sexual contact with his step-granddaughter, J.W.[1] Prior to trial, Appellant filed a motion to

---

[1] Appellant was also charged with rape, but that charge was later dropped by the State.

admit evidence of prior sexual conduct, asking the trial court to allow evidence of J.W.'s sexual relationship with N.P., a boy her own age.[2] In his motion, Appellant also argued that a denial of his motion would violate his federal and state constitutional rights of due process, fair trial, compulsory process, and confrontation.

On January 30, 2006, an in camera hearing was held on Appellant's motion. Appellant questioned J.W. and Regina Barnes, J.W.'s mother, on the issue of her sexual relationship with N.P. Following the hearing, the trial court issued a letter order and denied Appellant's motion finding that the evidence was inadmissible pursuant to the rape-shield statute, codified at Ark. Code Ann. § 16-42-101 (Repl. 1999). Because the letter order did not address Appellant's constitutional arguments, he renewed his motion, and it was again denied. Prior to trial, Appellant unsuccessfully renewed his motion to admit on two separate occasions.

On May 3, 2006, a trial was held during which Appellant proffered testimony from J.W., Ms. Barnes, and himself relating to J.W.'s sexual relationship with N.P. Following trial, Appellant was convicted as previously set forth. He was sentenced to 120 months' imprisonment on the sexual-abuse charge, and 240 months' probation on the sexual-assault charge. This appeal followed.

Appellant's first argument is that the trial court erred, both as a matter of statutory interpretation and constitutional application, in excluding evidence that J.W. had sex with N.P. First, Appellant argues that the trial court erred in excluding evidence, pursuant to the rape-shield statute, because the proffered testimony showed her motive to fabricate her allegations against Appellant. Second, Appellant claims that because of this exclusion, he was precluded from presenting a defense in violation of his constitutional rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and article 2, sections 8 and 10 of the Arkansas Constitution.

The rape-shield statute states, in pertinent part:

> In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202 . . . opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allega-

---

[2] The motion also asked the trial court to allow evidence that J.W. had a sexually transmitted disease, but that testimony is not a subject of this appeal.

tions of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code. Ann. § 16-42-101(b). Therefore, under section 16-42-101, evidence of a victim's prior sexual conduct is inadmissible by the defendant to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006).

We further reiterated that:

An exception to this rule exists when the trial court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c)(2)(C). The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *State v. Townsend*, 366 Ark. 152, 233 S.W.3d 680 (2006). Accordingly, the trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and we will not overturn the trial court's decision unless it constitutes a clear error or a manifest abuse of discretion. *Id.*

*Id.* at 601, 242 S.W.3d at 246. *See also Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004).

■ Here, Appellant claims that, as a matter of interpretation of the rape-shield statute, this case is governed by *Marion v. State*, 267 Ark. 345, 590 S.W.2d 288 (1979), such that evidence of an alleged victim's motive or bias is always admissible. This statement is simply incorrect. While it is true that motive or bias may be admissible, as it was in *Marion*, this evidence can only be allowed after an in camera hearing to determine the relevancy of the evidence and if its probative value outweighs its prejudicial nature. In *Marion*, this court determined that the proffered evidence was relevant to the question of whether the alleged act of

sexual intercourse actually occurred. In the instant case, the proffered evidence was not only barred by the rape-shield statute but also lacked any relevance to the question of Appellant's guilt. Specifically, the fact that J.W. had sexual intercourse with a boy her own age is not related to whether Appellant engaged in inappropriate sexual behavior with the minor victim. Accordingly, we cannot say that the trial court clearly erred in denying Appellant's motion.

■ Furthermore, Appellant's constitutional argument must also fail.[3] Appellant claims that he was denied the ability to present evidence of the context in which the allegations were made and thus was unable to adduce significant evidence of J.W.'s true motive. He concludes that this was a clear violation of his constitutional right to present a defense. However, during the trial, Appellant elicited testimony from J.W. as to another possible motive for accusing Appellant, specifically that she was bored at her grandparents' house. Thus, it was not that Appellant was not allowed to present a defense, but rather that he was not allowed to present the defense he wanted due to the exclusion of J.W.'s prior sexual conduct. As the exclusion was proper under section 16-42-101(b), the trial court did not err in finding that the exclusion did not violate Appellant's constitutional rights.

Appellant's second argument for reversal is that the trial court erred in failing to grant a mistrial, or issue an admonition, as a result of the State's improper closing remarks. We have made it very clear that a mistrial is a drastic remedy that should only be granted when justice cannot be served by continuing at trial, or when the error cannot be cured by an instruction or admonishment. See, e.g., Holsombach v. State, 368 Ark. 415, 246 S.W.3d 871 (2007); Smith v. State, 351 Ark. 468, 95 S.W.3d 801 (2003). We have also explained that "some leeway is given to counsel in closing argument and that counsel are free to argue every plausible inference which can be drawn from the testimony." Newman v. State, 353 Ark. 258, 290, 106 S.W.3d 438, 459 (2003). Therefore, a trial court is given broad discretion in controlling the arguments of counsel, such that, absent an abuse of that discretion, the trial

---

[3] Appellant is not challenging the facial validity of the rape-shield statute, but rather his position is that, as applied to the particular facts of this case, the exclusion violated those constitutional rights enumerated in the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and article 2, sections 8 and 10 of the Arkansas Constitution.

court's decision will not be disturbed on appeal. *See, e.g., Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001); *Cook v. State*, 283 Ark. 246, 675 S.W.2d 366 (1984).

In the present case, Appellant argues that on four separate occasions the State made improper comments during its closing arguments. Based on these comments, Appellant asserts that he is entitled to a reversal of his conviction because the prosecutorial violations, both individually and collectively, were sufficient to warrant a mistrial.

First, Appellant argues that a mistrial, or at least an admonishment, should have been issued on two occasions where, as he alleges, the State made improper comments and references to evidence that was excluded at the State's request. Specifically, because he was prevented by the rape-shield statute from showing what he believed was J.W.'s true motive for the allegations, Appellant asserts that a mistrial was warranted due to the following comments made by the State in its closing arguments concerning what, if any, motivation J.W. would have to lie about Appellant.

The first comment occurred during the State's closing argument when it stated:

> [PROSECUTOR]: Now, then you heard from Paw Paw, from the Defendant. What did he say? It didn't happen. What did the Defense attorney say at the beginning of the trial? This is a lie. That [J.W.] made this all up, and now she's having to deal with it and repeat the lie time and again.
>
> Ladies and gentlemen, what incentive does a 15 year old girl have to make this up?

The second alleged improper comment occurred during the State's rebuttal when the following was said:

> [PROSECUTOR]: What the Defense is trying to float out there is she didn't like these rules. She was bored, didn't want to go over there. What child of that age wouldn't be bored at certain times? Does that make any sense why a year and a half later she'd tell her mom about what this man had done to her because she was bored when she went over there? She didn't want to go over there anymore. Well, guess what, she wasn't having to

go over there anymore. She hadn't been over there but maybe two or three times —

In both instances, Appellant sought, and was denied, a mistrial. The trial court also declined to issue an admonishment based upon its belief that it would further emphasize the comment. Upon review, we cannot say that the trial court abused its discretion.

■ Appellant claims that these comments were improper because he was prevented by the trial court from presenting evidence of J.W.'s prior sexual activity and her true motive to lie. First, as shown above, this evidence was properly excluded under the rape-shield statute as it had no relevance to the charges filed against Appellant. Second, Appellant incorrectly relies on *Cook*, 283 Ark. 246, 675 S.W.2d 366, and *Calvin v. Jewish Hospital of St. Louis*, 746 S.W.2d 602 (Mo. Ct. App. 1988), to support his argument that the State was not allowed to discuss evidence excluded on an attorney's motion. Here, Appellant, not the State, sought to have the testimony related to J.W.'s sexual relationship with N.P. admitted under the rape-shield statute. Therefore, both *Calvin* and *Cook* are inapposite.

Lastly, the trial court is in the best position to determine the effect of statements on the jury and, in this case, the trial judge commented that he felt that an admonishment would only further emphasize the comment. Here, the State's comments related to evidence already before the jury and "counsel [is] free to argue every plausible inference which can be drawn from the testimony." *Newman*, 353 Ark. at 290, 106 S.W.3d at 459. Thus, the trial court did not err in denying to grant a mistrial, or issue an admonishment, in response to either of these comments.

Next, Appellant argues that, because he was denied access to J.W.'s counseling records, the trial court should have granted a mistrial when the State made a reference to J.W.'s emotional state during closing arguments. At the end of the State's closing argument, the following took place:

> [PROSECUTOR]: Now, ladies and gentlemen, we're going to ask that you hold this Defendant responsible for these actions. [J.W.] has had to deal with the consequences of this Defendant's actions both physically and emotionally.

. . . .

[DEFENSE COUNSEL]: Again, I move for a mistrial. We were denied access to the counseling records, and I move — And she's talking about emotional, and I was denied access to the counseling records. And I again move for a mistrial. Second time. We just need to start over. And without waiving that, I move for an admonition.

[PROSECUTOR]: Your Honor, this victim cried while on the stand. I think that's more than enough emotional pain that she's having to deal with, and the jury saw that first-hand. I think that's proper argument.

Again, the trial court denied the motion as well as Appellant's request for an admonishment.

In the present case, the State was not referencing the sealed counseling records when it commented on J.W.'s emotional state. Rather, the State was making what is an obvious comment about J.W. having to deal with Appellant's actions "physically and emotionally," which was shown when she cried during her testimony. The trial court took note of the State's explanation that its comments related to J.W.'s emotional state, which the jury saw firsthand, and denied Appellant's motion for mistrial. Although the record itself does not state, "J.W. cried," the trial court has wide discretion in controlling the arguments of counsel. Accordingly, we cannot say that the trial court abused its discretion.

Lastly, Appellant argues that the State violated *Timmons v. State*, 286 Ark. 42, 688 S.W.2d 944 (1985), when it made reference to his sustained hearsay objections during Ms. Barnes's testimony. The alleged improper comments occurred during the State's final closing argument, as follows:

[PROSECUTOR]: But, ladies and gentlemen, Defense attorney wanted to make a big deal out of the fact that [J.H.] wasn't here to testify. If you recall, every time Regina Barnes tried to tell something —

[DEFENSE COUNSEL]: Objection, Your Honor.

. . . .

[DEFENSE COUNSEL]: This violates <u>Timmons v. State</u>. You cannot criticize a law —You cannot criticize counsel for an objection that was granted.

[THE COURT]: That's exactly right.

[DEFENSE COUNSEL]: And I move for another mistrial. That's why Timmons was reversed.

[PROSECUTOR]: Your Honor, the point I'm trying to make here is Defense counsel says that — He knows that if we'd have brought [J.H.] in here to testify that that would have been hearsay. That would have been inadmissible hearsay. He argued that to the jury. I can come back and try to correct that, Your Honor. He knew that if we'd have had [J.H.] here, come in this Court Room, and get on the stand and say [J.W.] told me she'd been sexually assaulted, he would have objected, and the Court would have sustained that objection, and it would have been a proper ruling.

Appellant's request for a mistrial and an admonishment were again denied.

The trial court did not err in denying the mistrial and failing to issue an admonition. Here, Appellant is relying on *Timmons*, 286 Ark. 42, 688 S.W.2d 944, to support his argument that the prosecution made an improper reference to properly sustained defense objections. In *Timmons*, we held that it was prejudicial "to allow the state to call a witness to the stand when it is already known that the witness cannot give valid relevant testimony and then argue to the jury that it was the appellant who prevented the jury from hearing the evidence." *Id.* at 43, 688 S.W.2d at 944. Upon review, *Timmons* is distinguishable and not applicable to this case.

Here, J.W. testified that she told her friend J.H. about Appellant's abuse and that J.H. was not present in the courtroom. Then, during closing arguments, Appellant's counsel referred to the State not calling J.H. Specifically, he stated, "There was a claim that she told a girl named [J.H.], but did the State call [J.H.]? No. I think that's telling that there's no [J.H.] here to corroborate even that flimsy part of the story." The alleged improper comment occurred during the State's final closing arguments when it referred to Ms. Barnes's testimony. In response to Appellant's objection, the State stated that it was merely trying to explain hearsay to the jury by reminding them of Appellant's successful hearsay objections during Ms. Barnes's testimony, as well as to

explain J.H.'s absence and her inability to testify. It is clear that the State's statements were not attacking the validity of the trial court's hearsay rulings, nor was the State trying to evade the trial court's earlier rulings, as in *Timmons*. Rather, the State was only attempting to explain and rebut Appellant's closing remarks. As such, the trial court did not abuse its discretion in denying the mistrial or in failing to issue an admonishment.

Affirmed.

IMBER, J., not participating.