# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2844

_____

| | | |
|---|---|---|
| Artie Jackson, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Larry Norris, Director, Arkansas | * | |
| Department of Correction, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 17, 2011
Filed: August 25, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

SMITH CAMP, District Judge.

In 2006, a jury in Pulaski County, Arkansas, convicted Artie Jackson of first-degree sexual abuse and second-degree sexual assault of J.W., his wife's minor granddaughter. The state court sentenced Jackson to 120 months incarceration on the sexual abuse charge and 240 months probation on the sexual assault charge. After the Supreme Court of Arkansas affirmed his convictions, Jackson filed a petition for

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

writ of habeas corpus in the United States District Court for the Eastern District of Arkansas, under 28 U.S.C. § 2254, alleging that the trial judge violated Jackson's constitutional right to present a defense by excluding evidence of the victim's prior sexual history, pursuant to a rape shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999). The federal district court granted the petition for writ of habeas corpus, and we now reverse.

## I. BACKGROUND

On December 21, 2004, fourteen-year-old J.W. and her mother, Regina Barnes, had a talk about sex. Barnes asked J.W. if she had engaged in sexual activity, and J.W. admitted that she had sexual relations with a minor boy at his home when she was twelve or thirteen years old. When Barnes asked J.W. how she got to the boy's house, J.W. said that Jackson drove her there. J.W. then revealed that Jackson had sexual contact with her several times, beginning when she was seven or eight years old.

At trial, Jackson tried to introduce evidence of J.W.'s sexual contact with the minor boy on the theory that J.W. fabricated the allegations of Jackson's sexual misconduct in order to deflect her mother's anger. The trial judge conducted an *in camera* hearing to determine the admissibility of J.W.'s sexual history, pursuant to the Arkansas rape shield statute. During such a hearing, the court can make a written determination that evidence of a victim's prior sexual conduct should be admitted, if it is (1) relevant to a fact in issue, and (2) has probative value that outweighs its inflammatory or prejudicial nature. *White v. State*, 242 S.W.3d 240, 246 (Ark. 2006). During the hearing, J.W. and Barnes both testified that when J.W. admitted that she engaged in sexual conduct with the boy, Barnes was mildly upset. Barnes testified, however, that she was not angry with J.W. nor did she threaten to punish her, and that J.W. had no reason to believe that she would be in trouble. The trial court

determined that evidence of J.W.'s prior sexual conduct was irrelevant and that its exclusion did not violate Jackson's right to present a defense.

At trial, J.W. was not able to recall the exact number of her sexual encounters with Jackson, nor the dates of all the alleged assaults, but she testified as to at least ten incidents and was very specific and detailed in her description of them. Jackson also testified, and denied any sexual abuse or assaults of J.W. He said that he and his wife babysat for J.W., and that J.W. was tired of being at his house and disliked performing chores, causing her to fabricate the allegations of sexual assault.

After the jury returned its verdict of guilty, Jackson appealed. The Arkansas Supreme Court affirmed the trial court's ruling, agreeing that the evidence of J.W.'s prior sexual history was inadmissable under the Arkansas rape shield statute, and lacked relevance to the question of Jackson's guilt. *Jackson v. State of Arkansas*, 249 S.W.3d 127, 130 (Ark. 2007).

Jackson petitioned for a writ of habeas corpus, arguing that his right to present a defense was impaired in violation of the Sixth and Fourteenth Amendments to the United States Constitution. *Jackson v. Norris*, 734 F. Supp.2d 606, 611-12 (E.D. Ark. 2010). The federal district court granted Jackson's petition, and this appeal followed, brought in the name of the state official in whose custody Jackson resides.

## II. STANDARD OF REVIEW

This court reviews a district court's legal conclusions *de novo*, and its factual findings for clear error. *Williams v. Norris*, 612 F.3d 941, 946 (8th Cir. 2010) (citing *McGehee v. Norris*, 588 F.3d 1185, 1193 (8th Cir. 2009), *cert. denied, McGehee v. Hobbs,* 131 S. Ct. 1474 (2011)), *cert. denied,* 131 S. Ct. 1677 (2011). Because this appeal presents a question of law, this court reviews *de novo* the district court's decision to grant the petition.

-3-

A federal court may not grant habeas relief unless the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence adduced in state court. 28 U.S.C. § 2254(d)(1)-(2). The phrases "contrary to" and "unreasonable application of" in section 2254(d)(1) and (2) have independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A federal court may issue a writ of habeas corpus under the "contrary to" clause if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable. *Id.* A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Collateral reviews of state-court convictions mandate a highly deferential standard of review for a claim of constitutional error that was adjudicated on the merits in state court. *Siers v. Weber*, 259 F.3d 969, 972 (8th Cir. 2001). A state court's application of clearly established federal law must be objectively *unreasonable*, and not merely incorrect, to warrant the granting of a writ of habeas corpus. *Bell*, 535 U.S. at 694 (citing *Williams,* 529 U.S. at 403-04).

## III. DISCUSSION

Under the Arkansas rape shield statute, evidence of the sexual history of a victim can be admitted, following an *in camera* hearing, if the evidence satisfies a two-prong test. First, the trial judge must determine whether the evidence is relevant to a fact at issue. If so, the trial judge then must determine whether the probative value of the evidence outweighs its prejudicial and inflammatory nature. Here, the Supreme Court of Arkansas reviewed the trial court's decision to exclude evidence of J.W.'s prior sexual activity, concluding that the evidence was "not related to

whether [Jackson] engaged in inappropriate sexual behavior with the minor victim." *Jackson,* 249 S.W.3d at 130. The trial court noted that, during the *in camera* hearing, both J.W. and Barnes testified that Barnes was not angry with J.W. following her revelation of sexual conduct and, therefore, J.W. had no motive to fabricate the allegations of molestation by Jackson. The Arkansas Supreme Court therefore determined that evidence of J.W.'s prior sexual activity was irrelevant and was properly excluded.

The federal district court conducted its own analysis, and determined that the evidence of J.W's prior sexual conduct was relevant because "it [was] not the fact that the victim had sexual intercourse with a boy her own age that was relevant, but rather the fact that she first accused [Jackson] of sexual misconduct immediately after revealing to her mother that she had been sexually active." *Jackson,* 734 F. Supp. 2d at 612.

While the correctness of Arkansas courts' determination of the relevance of the evidence may be questioned, and while other judges may have reached a different conclusion, the decision of the Arkansas Supreme Court in upholding the evidentiary ruling of the trial court was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1)-(2). Jackson's constitutional right to present a defense was not impaired, because that right does not extend to the introduction of irrelevant evidence. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."); *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006) ("[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.")

# IV. CONCLUSION

It was not unreasonable for the Arkansas Supreme Court to determinate that evidence of J.W.'s prior sexual conduct was irrelevant to facts at issue in Jackson's case. Upon *de novo* review, the district court's decision is reversed and Jackson's petition is denied.

_____

BYE, Circuit Judge, dissenting.

"It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony." Boysiewick v. Schriro, 179 F.3d 616, 620 (8th Cir. 1999). While that right may be limited when faced against other legitimate interests, such as the protection of rape victims, courts "must balance the importance of the excluded evidence to [a] petitioner's defense against [a person's] interests as a rape victim." Id. In this case, the Arkansas Supreme Court's cursory interpretation of the Arkansas rape-shield statute violated Artie Jackson's constitutional right to present a complete defense. Based on a wealth of precedent protecting Jackson's constitutional right, I respectfully dissent from the majority's decision reversing the district court's grant of Jackson's habeas petition.

Arkansas' rape-shield statute is designed "to shield victims of sexual abuse or rape from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is not relevant to the defendant's guilt." Woodall v. State, 2011 Ark. 22, at *4, _ S.W.3d _ (2011). Although the statute bars the admission of evidence of a victim's prior sexual conduct, Ark. Code Ann. § 16-42-101(b), it allows "evidence directly pertaining to the act upon which the prosecution is based or evidence of the victim's prior sexual

conduct with the defendant or any other person . . . if the relevancy of the evidence is determined" in a manner according with the statute. Ark. Code Ann. § 16-42-101(c). To determine whether evidence is relevant, (1) the defendant must file a written motion describing the evidence and its relevancy prior to resting, and (2) the court must hold an *in camera* hearing. Id. "Thus, the rape-shield statute is not a complete bar to the introduction of evidence of a victim's prior sexual conduct; but, the circuit court is vested with a great deal of discretion in ruling whether the evidence is relevant." Keller v. State, 263 S.W.3d 549, 552 (Ark. 2007).

In reviewing the state trial court's decision, the Arkansas Supreme Court based its relevancy determination solely on J.W.'s prior sexual activity with a minor boy. Concluding the evidence "lacked any relevance" to Jackson's case, the court stated, "the fact that J.W. had sexual intercourse with a boy her own age is not related to whether [Jackson] engaged in inappropriate sexual behavior with the minor victim." Jackson v. State, 249 S.W.3d 127, 130 (Ark. 2007). In framing the relevancy in this context, it is not surprising the court concluded the evidence was not relevant to Jackson's case. See United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) ("[U]nchastity of a victim has no relevance whatsoever to [the victim's] credibility as a witness.").

As the district court recognized, the Arkansas Supreme Court's analysis completely missed the mark. Jackson's proffered evidence is not about whether J.W. had consensual sex with a boy her own age; instead, it centers on J.W.'s motive for leveling accusations against Jackson. Specifically, Jackson desired to present to the jury the context of the conversation between J.W. and her mother to demonstrate that J.W. may have fabricated the allegations due to her fear of punishment from her mother and her mother's feelings of disappointment after J.W. revealed she had engaged in sexual relations with the boy. It is undisputed that it was against this emotional backdrop when J.W. first accused Jackson of sexually assaulting her. By concentrating on J.W.'s consensual sex alone, rather than the context of the

-7-

conversation in which J.W.'s accusations first surfaced, the Arkansas Supreme Court's analysis was oblivious to the actual relevancy of the evidence.[2]

Once the focus is properly placed on J.W.'s motive, it becomes clear the proffered evidence was highly relevant to Jackson's case. "'[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" Olden v. Kentucky, 488 U.S. 227, 231 (1988) (per curiam) (quoting Davis, 415 U.S. at 316-17). This is particularly true in a sexual assault case such as this, where there was no physical evidence and the entire case rested on J.W.'s credibility. See United States v. Pumpkin Seed, 572 F.3d 552, 561-62 (8th Cir. 2009) (discussing the key role the probative value of motive testimony plays in sexual assault cases in determining the evidence's admissibility).

To be sure, "[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it." Davis, 415 U.S. at 317. It is of little controversy,

---

[2]Both the State, Appellant's Br. at 2, and the majority, *supra* at 4, quote the Arkansas Supreme Court's determination that the proffered evidence was "not related to whether [Jackson] engaged in inappropriate sexual behavior with the minor victim." Jackson, 249 S.W.3d at 130. However, both conveniently omit the opening portion of the quote; in its entirety, the court stated, "*the fact that J.W. had sexual intercourse with a boy her own age* is not related to whether [Jackson] engaged in inappropriate sexual behavior with the minor victim." Id. (emphasis added). This slight alteration illuminates the flaw in the majority's analysis at its core – the omitted portion exposes the unreasonableness of the Arkansas Supreme Court's relevancy determination, particularly when viewed against an abundance of case law holding motive evidence is not only relevant, but central to sexual assault cases, among other cases. See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.") (internal quotation marks and citation omitted).

however, that the jury should have had the opportunity to assess Jackson's defense theory concerning J.W.'s motive. See id. ("[T]he jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [a witness's] testimony which provided a crucial link in the proof . . . of petitioner's act.") (internal quotation marks and citation omitted); Crane v. Kentucky, 476 U.S. 683, 690-91 (1986) ("We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. Such an opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence.") (internal quotation marks and citations omitted). If the jury had before it the full context of the conversation in which the allegations arose, the evidence may have significantly affected its assessment of J.W.'s credibility. See Olden, 488 U.S. at 232 ("It is plain to us that '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)).

Having decided the proffered evidence was not relevant, the Arkansas Supreme Court neglected to conduct any weighing between the probative value of the evidence and its prejudicial nature. See Woodall, 2011 Ark. 22, at *4 ("[W]here the circuit court, at an in camera hearing, makes a written determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature, an exception [to the rape-shield statute] is granted."). Consequently, the district court had no ruling before it to give deference on this issue. I agree with the district court's independent assessment, however, because the evidence was central to Jackson's right to present a defense, as discussed above, and it had little prejudicial effect to J.W. because it was a reference to an isolated episode of consensual sex with a boy her own age. Moreover, there is no indication Jackson would have delved into a detailed account of the sexual encounter – or any account

-9-

for that matter – other than the mere mention of its occurrence in the context of the conversation. Certainly it could be argued the evidence had some prejudicial effect due, for example, to J.W.'s young age at the time and the likelihood she would not desire to discuss the matter in open court, but I do not believe the prejudicial effect was so heavy that it outweighed the highly probative value of the evidence.

Finally, if there were any lingering doubt on the issue, I find instructive United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004), where this court considered whether a defendant's right to present a defense was violated by the trial court's exclusion of a witness's opinion testimony that the child victim was untruthful. This court discussed how the child's credibility "was one of the central issues in the case, and it was thus critical that material evidence relating to its veracity be admitted for the jury's consideration." Id. at 735. Because the exclusion of the evidence was improper under the Rule 403 balancing test, "and the testimony was clearly relevant to one of the central issues of the case," the court held the exclusion violated the defendant's right to present his defense. Id.

Similar to Turning Bear, the exclusion of the evidence in this case violated Jackson's constitutional right to present a defense, and the error was not harmless. J.W.'s motive was central to Jackson's case, making it imperative for the jury to have the evidence before it in order to properly assess her credibility in accusing Jackson of sexual assault.[3] In the absence of this evidence, Jackson was forced to present a weak theory that J.W. made up her story out of boredom from staying at Jackson's house. Compounding its unreasonable relevancy determination, the Arkansas Supreme Court concluded the boredom defense sufficed for purposes of Jackson's constitutional rights because "it was not that [Jackson] was not allowed to present a

---

[3]The effect of the trial court's exclusion of the proffered evidence was further magnified during closing argument, when the prosecutor repeatedly argued J.W. had no motive to make up the story.

defense, but rather that he was not allowed to present the defense he wanted due to the exclusion of J.W.'s prior sexual conduct." Jackson, 249 S.W.3d at 130. Once again, it is of little controversy that Jackson's constitutional right to "a meaningful opportunity to present a complete defense," United States v. Holmes, 413 F.3d 770, 774 (8th Cir. 2005) (internal quotation marks and citation omitted), is not satisfied merely by the ability to present *any defense whatsoever*, as the Arkansas Supreme Court essentially concluded.

In sum, because of the material relevancy of the proffered evidence in this sexual assault case, coupled with the limited prejudicial effect to J.W., the rape-shield statute had to yield to Jackson's constitutional right to present his defense. See Stephens v. Miller, 13 F.3d 998, 1010 (7th Cir. 1994) ("[T]he desire to shield rape victims from harassment must yield in certain cases to another vital goal, the accused's right to present his defense.") (Cummings, J., dissenting). In contrast to the majority's decision, I do not believe the multiple errors on the part of the Arkansas Supreme Court may be brushed aside as a matter of correctness. Rather, the Arkansas Supreme Court's decision was clearly contrary to, or an unreasonable application of, clearly established federal law based on the multitude of decisions protecting a defendant's right to present a complete defense. I would therefore affirm the district court's grant of Jackson's habeas petition.

_____