

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-16-317

| | |
|---|---|
| BOBBY LEE ROBINSON<br>APPELLANT | **Opinion Delivered:** November 16, 2016 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72CR2014-2077-6] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE MARK LINDSAY,<br>JUDGE |
| | AFFIRMED |

## RITA W. GRUBER, Judge

Bobby Lee Robinson was charged in the Circuit Court of Washington County as a habitual offender with one count of second-degree sexual assault. He was convicted by a jury and was sentenced to thirty years in the Arkansas Department of Correction and a fine of $15,000. He now appeals, raising three points. He contends that (1) the trial court violated his right to present a defense by excluding evidence that he had threatened to tell the victim's mother that the victim was sexually active with her boyfriend, (2) there was insufficient evidence to support the conviction, and (3) the court erred in admitting into evidence prior statements he (Robinson) had made about the size of the victim's breasts. We affirm.

The State charged Robinson with committing second-degree sexual assault by engaging in sexual contact with the victim, either by forcible compulsion or when she was incapable of giving consent, by putting his penis in her hand and ejaculating on her hand and bedding. Under Arkansas Code Annotated section 5-14-125(a), a person commits sexual

assault in the second degree if the person:

(1) Engages in sexual contact with another person by forcible compulsion; [or]

(2) Engages in sexual contact with another person who is incapable of consent because he or she is:

(A) Physically helpless;

(B) Mentally defective; or

(C) Mentally incapacitated[.]

Ark. Code Ann. § 5-14-125(a) (Repl. 2013). "Sexual contact" is "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(10).

The trial court conducted a pretrial hearing on two motions: a motion by Robinson to admit evidence that could be barred by the rape-shield statute and a motion by the State to admit testimony that he had made remarks of a sexual nature to the victim before the date of the alleged offense. At the conclusion of the hearing, Robinson's motion was denied. The State's motion was granted, and testimony of the remarks was presented at trial.

*Sufficiency of the Evidence*

Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence before a review of trial errors. *Dillon v. State*, 317 Ark. 384, 388, 877 S.W.2d 915, 917 (1994). The reviewing court determines if there is substantial evidence to support the verdict. *Id.* Evidence is substantial if, when viewed in the light most favorable to the appellee, it is of sufficient force to compel reasonable minds to reach a conclusion and to pass beyond suspicion or conjecture. *Id.*; *Brown v. State*, 374 Ark. 341, 343,

288 S.W.3d 226, 228 (2008). Evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury. *Id.* Even the uncorroborated testimony of a child victim may constitute substantial evidence supporting a guilty verdict for a sexual offense. *Id.* The jury may resolve conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts. *Sera v. State*, 341 Ark. 415, 439, 17 S.W.3d 61, 76 (2000). Only the evidence supporting the verdict will be considered on appeal. *Id.* at 434, 17 S.W.3d at 73.

Applying the proper standard of review, we now examine the evidence that supports the verdict in this case. Robinson intermittently stayed overnight in the home of the victim's family and helped them out. He and the victim's mother were friends but not romantically involved, and the children in the household called him "Bob" or "Daddy." He was at the house the first weekend of November in 2013 when the family was insulating windows with plastic.

S.L. testified that, when she was fifteen years old, the following events occurred on the weekend at issue. She was balanced on a step stool by a window and needed no help, but Robinson put his hand on her lower back and bottom and moved his hands lower and lower—actions that made her uncomfortable. She went to bed alone in her room that night, and Robinson went to another bedroom. She was awoken around 3:00 a.m. by her hand "going back and forth" in the air, and she looked up to see him leaning into the side of her bed. She testified,

> I asked him what he was doing and at that moment I jerked my hand away.
> He jerked it back making my hand move faster and ejaculated on my hand and on the

blanket I was [lying] on.  And after he was done he said that, sorry, I'm drunk, pulled up his pants and left my room. I looked down and I was like oh my gosh. Went and washed my hand off and went back to my room.  A few minutes passed, I don't know how much.  My grandmother had gotten up went to the bathroom. I went in there to her and I told her when it happened.  And she asked me if I was sure if I was dreaming.  And I was like no it's in there [on] my [bed], go check.[1]  And then he went in the living room [and] sat down on the couch after she had [gone to] my room and checked.  And she saw that it was true, went and got my mom.

S.L. testified that she did not touch Robinson's penis of her own free will.  She said that her hand "was on him" and his hand was on top of hers; that when she tried to pull away, he held her hand tighter and made her hand go faster; and that he let go only after he had ejaculated. She also testified that he had commented about her body before this incident—remarking that she had bigger "tits" than the actress on the television show that Robinson, S.L., and one of her sisters were watching.

S.L.'s grandmother, Matilda Chavis, testified that she slept in a recliner because she was disabled.  When she went into the restroom on the night in question, S.L. came in—so hysterical that she wouldn't talk.  Shaking, crying, and holding onto Chavis tightly, S.L. began to tell her what had happened in her bedroom.  Chavis went to the bed, looked at the blanket, noticed a wet spot, and felt it; the spot was a slimy substance.  She awakened S.L.'s mother, Khristal Lunsford, and told her what had happened.

Lunsford testified that she went to S.L.'s bed to make sure that there was something

---

[1]The abstract of appellant's brief is replete with spelling errors, which we have silently edited when possible.  The words "on my bed" are abstracted as "all my bad," making the testimony almost nonsensical.  We remind counsel that the abstract shall be a condensation of information in the transcript that is essential for us to understand the case and decide the issues on appeal.  Ark. Sup. Ct. R. 4–2(a)(5) (2016).

on the blanket. She found the wet spot, several inches in diameter and "right where [S.L.] would have been lying . . . beside her . . . hip or hand." Lunsford felt the spot, found it to be "like mucus," and thought that it was "sperm." She ordered Robinson to leave the house, and he did. Chavis put the blanket in a plastic trash bag to prevent tampering and put the bag on the couch, where no one "messed with it" before the police arrived.

Detective Matt Ray interviewed Robinson and asked him about the wet spot on the blanket. Robinson told him that the family's dogs slept with S.L. and were probably the source of the spot. Ray took a DNA sample from Robinson by swabbing the inside of his mouth. The swabs and the blanket were sent to the Arkansas State Crime Laboratory for testing. Forensic serologist Phillip Rains testified that two of the four stains on the blanket were semen: one on the upper left corner of the blanket and the other on the center line. Forensic DNA examiner Maddison Harrell, who compared the semen from the blanket with Robinson's DNA on the swabs, testified "within all scientific certainty" that the semen was Robinson's and would be found only once in 143 quintillion times in the Caucasian population.

Robinson moved for a directed verdict after the State rested and after the defense rested without putting on a case. Each time, the trial court denied the motion. Robinson argued to the trial court that he did not sexually touch the victim; rather, S.L. testified that she had touched his penis. He argued that there was no proof of the element of "forcible compulsion"—specifically, there was insufficient proof of physical force and no proof that he threatened to kidnap the victim, and the State did not prove that she was physically helpless.

Robinson now argues that the only evidence of a sexual act was the semen on S.L.'s blanket, that testing did not reveal how old the semen was, and that no evidence tied it to S.L.—who could have simply found the blanket and made up a story. He also argues that the State failed to put on evidence of forcible compulsion or that S.L. was physically helpless.

The denial of a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Jeffries v. State*, 2014 Ark. 239, at 3, 434 S.W.3d 889, 893. A party is bound by the scope and nature of his or her directed-verdict motion and cannot change the grounds on appeal; appellate review is limited to those grounds that were presented to the trial court. *Plessy v. State*, 2012 Ark. App. 74, at 3–4, 388 S.W.3d 509, 513; *Holt v. State*, 2011 Ark. 391, at 7, 384 S.W.3d 498, 504. The only arguments that Robinson made in his directed-verdict motion and raises on appeal are those concerning the elements of forcible compulsion and physical helplessness.

"Forcible compulsion" is defined as "physical force *or* a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (emphasis added). "Physical force" means any bodily impact, restraint or confinement. *Dillon v. State*, 317 Ark. 384, 389, 877 S.W.2d 915, 917 (1994). The test for determining whether there was force is whether the act was against the will of the party on whom the act was committed. *Mosley v. State*, 323 Ark. 244, 249, 914 S.W.2d 731, 734 (1996). Here, S.L. testified that she had pulled her hand away from Robinson's penis when she became aware of what was happening and that he had placed her hand back on his penis and held it there until he ejaculated. We hold that this testimony constituted substantial proof of the element

6

SLIP OPINION

of forcible compulsion.

A person is "physically helpless" when unconscious, physically unable to communicate a lack of consent, or rendered unaware that a sexual act is occurring. Ark. Code Ann. § 5-14-101(7). A sex-crime victim who is asleep during a sexual act is physically helpless because she is unconscious and cannot give consent. *E.g.*, *Wilson v. State*, 2012 Ark. App. 566, at 4. Here, S.L. testified that her hand was already on Robinson's penis when she woke up. Thus, she was asleep and could not consent when the act began, which satisfies the element of physical helplessness.

*Denial of Robinson's Motion to Admit Evidence of the Victim's Motive to Lie*

Robinson contends that the trial court violated his right to present a defense by excluding evidence that he had threatened to tell Lunsford that S.L. was sexually active with her boyfriend. Under our rape-shield statute, "evidence of specific instances of the victim's prior sexual conduct . . . is not admissible by the defendant . . . to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose." Ark. Code Ann. § 16-42-101(b) (Repl. 1999).[2] An exception may be granted when the circuit court makes a written determination at an in camera hearing that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c)(2)(C). The statute's purpose is to shield victims of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded

---

[2]The State points out that Arkansas Rule of Evidence 411 contains the relevant text of the statute.

7

before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Jackson v. State*, 368 Ark. 610, 614, 249 S.W.3d 127, 129 (2007). The trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and the appellate court will not overturn the trial court's decision unless it constitutes a clear error or a manifest abuse of discretion. *Id.*

Robinson filed a pretrial motion and brief to introduce evidence of S.L.'s prior sexual conduct pursuant to Arkansas Code Annotated section 16-42-101. He asserted that on November 1, 2013, he overheard a sexually explicit conversation between S.L. and her boyfriend; confronted her; gave her a three-day deadline to tell Lunsford that she (S.L.) was sexually active; and said that he would tell Lunsford if S.L. did not. Robinson asserted that S.L. reported the incident at issue the night before the three-day period was to expire. He also asserted that Lunsford had previously forbidden her older daughter from seeing a boyfriend because they were sexually active and that S.L. did not want the same punishment. Robinson stated that the purpose of this evidence was twofold: showing the victim's motive to fabricate the allegation against him and showing an independent source of her knowledge of intimate sexual matters and functioning. He claimed that a denial of his right to present the evidence would violate his constitutional right to present a defense.

At the in camera hearing, Robinson testified that he had given S.L. the three-day deadline to tell Lunsford about what he had allegedly overheard. The court denied his motion to allow evidence of S.L.'s alleged sexual conduct, stating that to admit it would violate the rape-shield statute's intent that evidence of a victim's sexual conduct is inadmissible

to attack the victim's credibility, to establish a defense, or for any other purpose. The court stated that Robinson had not presented independent evidence to corroborate the evidence, that the court would allow his proffer at the end of the hearing, and that Robinson would have difficulty establishing knowledge that S.L. had not told her mother about the matter. The court did not address Robinson's argument that he was denied his constitutional right to present a defense.

Robinson relies on *Marion v. State*, 267 Ark. 345, 590 S.W.2d 288 (1979), a decision by our supreme court soon after our rape-shield statute was enacted. Marion's defense to rape was that he and the victim did not have sexual intercourse on the alleged occasion. He proffered evidence that the victim falsely accused him because she had threatened to "get even" in their fight over his contracting a venereal disease from her. 267 Ark. at 348, 590 S.W.2d at 290. The *Marion* court held that under those circumstances, the victim's bias, prejudice, or ulterior motive for filing the charge was relevant to whether the alleged act of sexual intercourse actually occurred and that the probative value of the evidence outweighed its inflammatory or prejudicial nature.

Subsequent to the *Marion* decision, our supreme court emphasized that evidence of a victim's motive or bias is admissible only when it is relevant and its probative value outweighs its prejudicial nature. *Jackson v. State*, 368 Ark. 610, 249 S.W.3d 127 (2007). The *Jackson* court found that the defendant's proffered evidence was barred by the rape-shield statute and lacked any relevance to the question of guilt—specifically, the fact that the victim "had sexual intercourse with a boy her own age" was not related to whether Jackson had "engaged in

9

inappropriate sexual behavior with the minor victim." 368 Ark. at 615, 249 S.W.3d at 130.

Likewise, in the present case, any explanation of S.L.'s motive to lie was irrelevant in light of the evidence that Robinson's wet semen was on her bed on the night of the alleged incident. The trial court was well within its discretion to reject Robinson's motion to present evidence about S.L.'s relationship with her boyfriend. Moreover, the evidence he wanted to offer was irrelevant and did not account for the presence of his semen. We cannot say that the trial court abused its discretion by excluding the evidence that Robinson sought to admit; therefore, no error occurred.

*Admission of Evidence that Robinson Had Made Sexual Remarks to the Victim*

Robinson contends that the trial court erred in admitting the State's evidence that, before allegedly committing the act of second-degree sexual assault, he had made statements to S.L. about the size of her breasts. The State filed its motion in limine to admit the evidence under Arkansas Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2016). The State argued that evidence of Robinson's remarks was admissible to prove his state of mind and sexual proclivity for the victim, to corroborate the victim's testimony, to bring to light the entire circumstances surrounding the crime, and to refute the defense asserted. Robinson responded that the alleged statement, although "uncouth," did not demonstrate a depraved sexual instinct and that its prejudicial effect outweighed its probative value. Without stating a basis for its ruling, the trial court granted

10

the State's motion to allow the testimony.

Evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Lard v. State*, 2014 Ark. 1, at 6–7, 431 S.W.3d 249, 258. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant: it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Evidence of circumstances that explain the act, show motive, or illustrate the accused's state of mind may be independently relevant and admissible. *Id.* at 9, 431 S.W.3d at 259.

Pursuant to Arkansas Rule of Evidence 403, "[e]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Thus, a trial court may refuse to admit evidence that is unfairly prejudicial to the defendant, even if it might be relevant. *E.g.*, *Lard*, 2014 Ark. 1, at 7, 431 S.W.3d at 258. Evidence offered by the State, although likely to be prejudicial to the accused, should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. *Id.* The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and the appellate court will not reverse absent a showing of manifest abuse of discretion. *Id.* Likewise, the balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and the appellate court will not reverse the lower court's ruling absent a showing of manifest abuse. *Id.* Abuse of discretion is a high threshold that does not simply require error, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.*

We agree with the State that S.L.'s testimony that Robinson had crudely commented on the size of her breasts showed that he had noticed her in a sexual way. His awareness of her physical development and his comparing her to an actress was relevant to allow the jury to infer that he had a sexual attraction to S.L.—a circumstance that illustrated his state of mind with regard to her and thus was admissible under Rule 404(b). Robinson has not demonstrated that the testimony's prejudicial effect outweighed its probative value under Rule 403. We hold that the trial court did not abuse its discretion in allowing S.L. to testify about his comment to her about her breasts.

Affirmed.

HARRISON and HOOFMAN, JJ., agree.

*Amos J. Richards*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

SLIP OPINION