

# ARKANSAS COURT OF APPEALS

### DIVISION II
**No.** CR-16-725

| | |
|---|---|
| JEROMY ALLYN GEELHOED<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** February 22, 2017<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT<br>[NO. 61CR-15-008]<br><br>HONORABLE HAROLD S. ERWIN, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Jeromy A. Geelhoed was charged in the Circuit Court of Randolph County with committing second-degree domestic battering.[1] The State alleged that on November 16, 2014, Geelhoed used a leather belt to administer "licks" to his nine-year-old son, bruising the child's buttocks and the backs of his legs; made the child maintain a push-up position for up to 25 minutes; and slammed his head into concrete, causing a laceration. The State later filed a motion in limine under Arkansas Rule of Evidence 404(b) to admit evidence to the jury about prior violence and acts that Geelhoed had committed against the victim and other juveniles in the family. At a pretrial hearing, Geelhoed asserted that this evidence, prior bad acts of physical abuse in the family, was not relevant to the charge of committing domestic battering in 2014 and would prejudice the jury against him. The court ruled that the State

---

[1]A person commits second-degree domestic battering if the person knowingly causes physical injury to a family or household member he or she knows to be sixty years of age or older or twelve years of age or younger. Ark. Code Ann. § 5-26-304(a)(4) (Repl. 2013).

SLIP OPINION

could present Rule 404(b) evidence "only with a limit[ing] instruction and if you approach the bench prior to it being offered. It still has to be relevant and admissible." Over Geelhoed's objection at trial, witnesses testified about Geelhoed's prior physical abuse of juveniles in the family. The jury found him guilty, and the court sentenced him to 36 months' imprisonment in the Arkansas Department of Correction. Geelhoed now appeals, contending that the trial court erred in admitting into evidence the prior allegations of physical abuse. We affirm.

In its case-in-chief, the State first presented evidence of the 2014 incident that led to the charge of domestic battering. Sergeant Jessie McMillan of the Pocahontas Police Department testified that he had been dispatched to the home of the victim's mother the night of November 14, 2014, in response to a child-abuse call. He testified that he saw "pretty severe bruising . . . on the back of [the boy's] legs and butt from the bend of his knees up to the top of the waistline" and that the boy was terrified to go back home to his father's house, where he primarily lived. The child told McMillan that his father had given him thirteen licks with a belt, slammed his head into the concrete, and made him hold a push-up position. The child explained to McMillan that if "you hit the ground [from the push-up position] then it's automatic butt whipping. My brother's record was forty-five minutes. I had thirty-five."

Sergeant McMillan, Officer Mike King, and Allison Starr—the Department of Human Services (DHS) investigator who was on call—went to Geelhoed's house. He told them that the bruising could have happened when the boy climbed out a window, jumped a fence, or

played with his sister.  Geelhoed denied the abuse and said,

> The little girl in there and him seem to beat each other up with something. I don't hit them on the legs. There is no purpose in that.  If I have a problem with him I put him in a push up position until he falls.  Everybody knows that burn hurts. I don't have to whip that ass.

He described the victim as "stubborn and crafty . . . very scripted by his mother."

Allison Starr testified that she had spoken with the victim alone and photographed his bruises.  She testified that other members of the family signed a protection plan the next day but that Geelhoed did not want to because, in his words, he "did not use physical discipline." However, in the garage he showed her a "cloth rolled up belt"; he said that he used it for spanking and that it would not have made those marks on the boy.

Nurse practitioner Leah Privett testified that the victim said that Geelhoed hurt him "a lot" and recently had spanked him thirteen times with a belt, had made him stay in a push-up position for an extended time period, and had "pushed his head in the ground," causing an abrasion above the left eye.  She identified the photographs of his injuries as being consistent with what he had told her; her assessment and diagnosis was child abuse.

The victim testified by closed-circuit television, explaining how he "got the bruises" at his dad's house in November 2014 for doing something wrong:

> I was in the push-up position and he spanked me.  I cannot recall how many times. He hit me with a belt.  It was a leather belt that had metal [rings] on it; by the size and the pain I was in, it was more than ten times.  All I could see was the ground.  It hurt really bad.  I had an injury to my forehead.  Dad slammed my head onto the concrete. . . .  He is the person who hit me and gave me the bruises but I think it was out of

SLIP OPINION

anger.[2]

At this point in the trial, the State alerted the court that the State would attempt to elicit Rule 404(b) evidence from the years 2011 and 2012. Geelhoed objected that the evidence had no relevance to the case that was being tried. The court overruled the objection.

Arkansas Rule of Evidence 404(b) (2016) reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Lard v. State*, 2014 Ark. 1, at 6–7, 431 S.W.3d 249, 258. Evidence of circumstances that explain the act, show motive, or illustrate the accused's state of mind may be independently relevant and admissible. *Id.* at 9, 431 S.W.3d at 259. If testimony of other crimes, wrongs, or acts is independently relevant to the main issue, tending to prove some material point rather than merely to prove that the defendant is a criminal, evidence of that conduct may be admissible with a proper cautionary instruction by the court. *Smith v. State*, 351 Ark. 468, 473, 95 S.W.3d 801, 804 (2003). The list of exceptions under Rule 404(b) is not an exclusive list; rather, it gives examples of types of circumstances where evidence of other crimes, wrongs, or acts would be relevant and admissible. *Id.* at 472–73, 95 S.W.3d at 804.

---

[2]The victim also testified that Geelhoed had hit him "one time before but not as bad," using "the same kind of tool" and kicking him "around the house." He said, "Everybody else was there except [two others]. He did this in the garage."

Brenda Dupree, a DHS investigator for child maltreatment, testified that she had

spoken with Geelhoed in the past about a December 2011 hotline report of physical abuse of

the victim in the current case, who was then about seven years old:

> He said that he whipped [the boy], that he had been expelled from school. That
> he was spoiled rotten, and that I could pull him out of the home if I wanted to. He
> said [the boy] would piss on your shoes and go sit on the couch and laugh at you. He
> said [the boy] played mind games, that he was just like his mom. He was sick in the
> head. He had serious mental problems if we did not give him constant attention. I
> believe he was seven years old at the time. He said he used jumper cable to whip [the
> boy].

Dupree stated that no action was taken by DHS or the courts following this incident. She

explained that the allegations were found to be "unsubstantiated" because—without other

persons, pictures, or visible or physical proof—there was nothing to verify the severity of the

whipping. She explained, however, that "unsubstantiated" did not mean that DHS lacked

a belief that the incident had occurred.

Dupree also testified about an incident involving medical neglect of the boy, which

occurred a few months after the jumper-cable whipping. She testified that Geelhoed went

to the boy's school, saying that "he was going to remove [the boy]" and that it was

Geelhoed's business whether the boy was given his medicine. She described Geelhoed as

being "very angry" at the time.

Geelhoed's oldest son, the victim's nineteen-year-old half brother, testified that his

father was the household's disciplinarian. Geelhoed objected on grounds of relevancy to the

present case when the witness was asked if he had ever disclosed being abused by his father.

The court overruled the objection. The State asked the witness if he remembered telling

investigators in 2005 that Geelhoed had slapped him in the face. Geelhoed objected that

eleven years ago was too far afield. Again, the objection was overruled. The witness said that

he might have said it but could not recall and did not remember talking to investigators about

abuse by his father. When asked if he recalled telling investigators in 2009 that Geelhoed had

picked him up by the throat and put him against the wall, the witness testified that he

remembered speaking to investigators and that Geelhoed had grabbed him by the jaw and

slammed him against the wall, an act of "intimidation" as punishment for choking his brother.

"[W]here children are concerned, evidence of physical injuries to other children in the

home and even to a child in another home is probative of intent and the absence of mistake

or accident." *Branstetter v. State*, 346 Ark. 62, 73, 57 S.W.3d 105, 112 (2001). The *Branstetter*

court wrote:

> [The evidence] had a tendency to make it more probable the injuries were not the
> result of an accident or mistake and, thus, the evidence was relevant under Ark. R.
> Evid. 402. It also bears on intent. The evidence was not offered to show the bad
> character of Branstetter in an attempt to give the jury reason to believe that Branstetter
> is the type of person who would commit such an act, but rather was offered to show
> intent and lack of mistake or accident in the presently charged crime. The evidence
> is independently relevant proof of Branstetter's intent and the absence of mistake or
> accident in committing the offense. The evidence is admissible under the intent and
> absence-of-mistake-or-accident exception to Ark. R. Evid. 404(b).

*Id.* at 74, 57 S.W.3d at 113. Similarly, the trial court in the present case ruled that evidence

of Geelhoed's prior bad acts was not admitted as evidence of bad character.

"Evidence may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice[.]" Ark. R. Evid. 403 (2016). Evidence offered by the State,

although likely to be prejudicial to the accused, should not be excluded unless the accused can

6

show that it lacks probative value in view of the risk of unfair prejudice. *Robinson v. State*, 2016 Ark. App. 550, at 11, ___ S.W.3d ___, ___. The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and we will not reverse absent a showing of manifest abuse of discretion. *Id.* Likewise, the balancing of probative value against prejudice is left to a trial court's sound discretion; we will not reverse the lower court's ruling absent a showing of manifest abuse. *Id.* Abuse of discretion is a high threshold that does not simply require error; it requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* Geelhoed has failed to show how testimony by Dupree and the victim's brother about prior bad acts was unfairly prejudicial, nor has he shown that the trial court acted improvidently, thoughtlessly, or without due consideration in allowing the testimony into evidence.

Geelhoed asserts on appeal that there was no "finding or argument" that the prior bad acts were independently relevant to a material fact in this case and that the trial court did not "scrutinize" the Rule 404(b) evidence to determine if its probative value was substantially outweighed by the danger of unfair prejudice or other factors. We disagree.

The trial court stated in the pretrial hearing that Rule 404(b) evidence would be admitted only if it was relevant; Geelhoed's relevancy objections were overruled during trial; and Geelhoed made no specific argument regarding scrutiny. We agree with the State that these prior bad acts were introduced to establish that Geelhoed had used physical abuse to punish his children for wrongdoing before the incident leading to the present case, in which he physically abused the victim as punishment, and were particularly relevant to show that he

intentionally caused the injuries to the victim. Geelhoed has made no showing that the trial court manifestly abused its discretion in ruling that the evidence was relevant to the 2014 incident.

Geelhoed also complains that, despite the trial court's pretrial ruling that a limiting instruction would be given, the jury was not provided with a limiting or cautionary instruction when the Rule 404(b) evidence was introduced at trial. We agree with the State that Geelhoed can claim no error because he did not specifically request that the instruction be given when the evidence was introduced.

In *Vernon v. State*, 2 Ark. App. 305, 621 S.W.2d 17 (1981), the appellant argued that the trial court erred in failing to give a cautionary instruction when the Rule 404(b) testimony was admitted. After giving the instruction, the court asked appellant's counsel if that was satisfactory. Counsel answered that it was, no other objection was made, nor did counsel request any further action. We found no error in the timeliness of the cautionary instruction. *See id*.

Here, the trial court instructed the jury under AMI Crim. (Arkansas Model Criminal Instructions) 2d 203-A:

> Members of the jury, you are instructed that evidence of other alleged crimes, wrongs or acts of Jeromy Geelhoed may not be considered by you to prove the character of Jeromy Geelhoed in order to show that he acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that he may have, nor is to be considered to show that he acted similarly or accordingly on the day of the incident. This evidence is merely offered as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Whether any other alleged crimes, wrongs, or acts have been committed is for you to determine.



Geelhoed did not object to the timing of the cautionary instruction, and we find no error.

Affirmed.

KLAPPENBACH and GLOVER, JJ., agree.

*Martin E. Lilly*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.